# Wisdom v. Reeves.

*Statutory Action of Ejectment*

1. *Deed must be under seal to pass title if executed prior to 1852.*—Prior to the adoption of the Code of 1852, a conveyance of real estate was required to be executed under seal; and a deed to lands, executed in 1851, but not under seal, is ineffectual as a conveyance of the legal title.

[Wisdom v. Reeves.]

2. *Same; retroactive legislation.*—A new remedy may be given by the legislature to enforce existing rights, but the legislature can not give a right itself by retroacting on past transactions; and the provisions of section 2198 of the Code of 1852 (carried forward as section 2694 of the Code of 1886) that a seal in the execution of a conveyance to land was not necessary to pass the legal title thereto, do not retroact so as to give to a grantee of lands in a deed executed without seal prior to 1852, a title to such lands, so as to enable him to maintain or defend an action at law therefor.

3. *Same; conveyance of legal title when deed not executed under seal.*—Under the provisions of the statute (Code 1852, § 2198 ; Code of 1886, § 2694) that any instrument in writing, signed by the grantor is effectual to transfer the legal title to the grantee if such was the intention of the grantor, to be collected from the entire instrument, an indorsement on the deed that "I assign the within title of land unto * * * from me and my heirs forever," evincing the intention of the assignor to assign the legal title, is sufficient, if made after the adoption of the Code of 1852, to pass the legal title to the assignee in said instrument.

4. *Depositions; notice to adverse party of time and place of taking same.*—Notice to the adverse party, of the time and place of taking depositions on interrogatories is not necessary, since the statute (Code, § 2803) which provides for the taking of such depositions, requires no such notice ; and section 2802 of the Code, which requires such notice. applies only to open commissions for examination of witnesses without written interrogatories.

5. *Evidence; admissibility of depositions taken in former suit.*—A deposition which was taken by the defendant in an action of ejectment, may, the witness being dead, be used in an action of ejectment thereafter brought for the same lands by the same plaintiffs against the same defendant and his tenant, non-suit having been taken in the former action on the defendant interposing a plea that he was not in the actual possession at the time the first suit was brought, but that his tenant actually occupied the land sued for.

6. *Competency of witness to testify to acts and declarations of deceased person.*—Where, in an action of ejectment, brought for the recovery of land, by the legal representatives of R., deceased, claiming by inheritance from him, the defendant defends on the asserted validity of title acquired by N. from R , N. is incompetent to testify to transactions with or statements made by R. in reference to said lands, or to conversations as to the title of said lands with L., also deceased, and son of R. and father of some of the plaintiffs, from whom they directly inherit whatever interest they may have in the lands sued for.

7. *Same; same.*—In an action of ejectment, by the legal representatives of R., deceased, claiming by inheritance from him, the defendant, who claims by deed from N., also deceased, is competent to prove transactions with or statements by N., while N. was in possession of the land, tending to show adverse possession by N.

[Wisdom v. Reeves.]

8. *Same; declarations of party in possession.*—Where, in an action of ejectment, the defendant claims that his grantor, N., held under adverse possession, the plaintiffs may prove statements by N. tending to show that his possession was permissive, and in subordination to the title of R., through whom plaintiffs claim by inheritance, provided the statements were made while N. was in possession of the land sued for.

9. *Same; admissibility of parol proof to show real date of written instrument.*—Where the defendant, in an action of ejectment, relies on the assignment dated 1851 to his grantor, purporting to be executed by R. (through whom the plaintiffs claim by inheritance) indorsed on the deed of the property to R., plaintiff may introduce testimony of a witness that he saw the deed in 1859, and that the indorsement was not on it at that time, but that the indorsement was on it in 1868 when he again saw the instrument.

10. *Same; competency of declarations in disparagement of title.*—In an action of ejectment, the plaintiffs may introduce in evidence the testimony of a witness, that one R., their ancestor through whom they claim, in 1859, proposed in the presence of the defendant's grantor to sell the property sued for to the witness, and said grantor of the defendant did not object, but told the witness that he would thereby get a good title.

11. *Same; record of pending suit incompetent evidence.*—In an action of ejectment, the record of a pending suit by the same plaintiffs against the grantor of the defendant for their land, is irrelevant, incompetent and inadmissible in evidence.

12. *Same; testimony as to transactions with deceased persons* —Where, in an action of ejectment, the defendant relies on the transfer to his grantor, which purports to have been executed by the plaintiffs' deceased ancestor through whom the plaintiffs claim by inheritance, and which was indorsed on the deed of the property to plaintiffs' ancestor, the defendant can not testify in his own behalf, that his grantor told him how the transfer came to be put on the deed to the plaintiffs' ancestor; such evidence involving proof of the transaction with the plaintiffs' deceased ancestor, and being at the same time hearsay evidence.

13. *Same; burden of proof as to instrument with erasures.*—Where in the trial of an action there is produced in evidence, by one of the parties, an instrument on which an erasure or alteration appears, the burden is upon the person offering such instrument to explain it, and his failure to make a satisfactory explanation is a circumstance against the validity of the instrument.

14. *Same; proof of ancient document when the date thereof is controverted.*—Where an instrument purporting to have been executed for more than 30 years is offered in evidense as an ancient document, and there is evidence to show that its date has been changed, leaving it uncertain whether or not it was more than 30 years old, the trial

[Wisdom v. Reeves.]

judge should inspect the paper and hear such evidence as may be of-
fered to explain the uncertainty, and then determine whether it bears
marks of suspicion which, unexplained, justify its rejection as an an-
cient document; and if the judge admits such instrument, the jury
must receive it as, at least, *prima facie*, an ancient document, and
the burden is on the opposite party to show that it is not.

15. *Ejectment; recovery of rents on suggestion of adverse possession.*
Where in an action of ejectment three years adverse possession by
defendant is suggested, the assessment of the value of the use and
occupation of the land sued for is for the time of the adverse posses-
sion of defendant and those whose estate he has, up to the time of
the trial, not including the increased value of such use and occupa-
tion by reason of the improvements.

16. *Same; same; improvements made during permissive holding.*—Im-
provements made during a permissive holding are not within the pur-
view of the betterment act.

17. *Same; payment of rent no defense to tenant sued jointly with land-
lord.*—Where a landlord and his tenant are sued jointly in ejectment,
the latter may, if he choose, file a disclaimer of possession, but a plea
by him that he is a mere tenant, and has paid his rent to his land-
lord, constitutes no defense; and the facts so averred will not, if plain-
tiff recovers, protect the tenant from liability for mesne profits dur-
ing the time of his possession.

18. *Pleading and practice; error without injury.*—The refusal of the
trial court to allow pleas to be filed when they only set up facts which
are provable under a plea already filed, and the benefit of which the
defendant already has, is not available error.


APPEAL from Circuit Court of Etowah.
Tried before the Hon. JOHN B. TALLY.
This was a statutory action of ejectment, brought by
the appellees, as heirs of John S. Reeves, deceased,
against John H. Wisdom and John H. Harcrow, who
was in possession of the lands sued for as a tenant of the
said Wisdom. The action was instituted on March 10,
1891. When the cause was called for trial, the defen-
dant Harcrow asked leave to file a plea of disclaimer;
but upon the objection of the plaintiffs, the said plea
was not allowed, and to this ruling the defendant Har-
crow duly excepted. Thereupon Harcrow asked leave
to file a plea setting forth that he was only a tenant of
the plaintiff Wisdom, and had paid the rent due from
him up to the time of the bringing of the suit. The
plaintiffs objected to the interposition of this plea, and
the court sustained the objection, refused to allow the
plea filed, and to this ruling the defendant Harcrow duly

excepted. The defendant Wisdom filed a plea of not guilty, and asked leave to file a plea of the statute of limitations of 10 and 20 years, respectively, and *liberum tenementum.* Upon the plaintiffs' objecting to the defendants being allowed to file these pleas, the court sustained the objection, would not allow the pleas to be filed, and to this ruling the defendant Wisdom duly excepted. The defendant also filed a plea suggesting three years of adverse possession and permanent improvements. Upon issue being joined upon the plea of not guilty, the plaintiff offered in evidence a patent issued to David Dale, dated, September 2, 1850, which patent granted to the said Dale the lands sued for in the present action. There was then introduced in evidence by the plaintiffs the original deed of said David Dale to John S. Reeves, the plaintiffs' ancestor, bearing date October 31, 1851, conveying the property in controversy. This deed was properly executed and acknowledged. There was indorsed upon said deed an assignment from John S. Reeves, which is copied in the opinion. The defendants offered in evidence a deed executed by Nathan Reeves and his wife, on January 14, 1886, conveying to the defendant, J. H. Wisdom, the lands sued for ; and this deed was properly executed and acknowledged and recorded in the office of the judge of probate of Etowah county.

The facts in reference to the suit brought by the present plaintiffs against the defendant Wisdom, and the rulings on the evidence in the present suit in reference thereto, are sufficiently stated in the opinion ; as are also the facts in reference to the rulings of the court upon the objections to the deposition of Nathan Reeves taken in said prior suit, and certain portions of said witness's deposition.

Upon the introduction of the defendant Wisdom as a witness, he testified that he had known Nathan Reeves, his grantor, for fifteen years before his death, which occurred in the summer of the year 1891 ; that said Reeves was living on the lands in controversy when he first knew him, and lived on them until he sold them to the witness on January 14, 1886. The witness was then asked : "If in the year 1880 he saw said Nathan Reeves in possession of said lands ; and if so, what, if anything, did he tell him how he was holding said lands?" Plaintiffs objected to this question, because it called for irre-

levant and illegal testimony, and the witness was incompetent to prove any transaction with, or any declaration made by, said Nathan Reeves. The defendants expected to prove by said witness in response to said question, that he saw the said Nathan Reeves on the land in controversy and in possession thereof in the year 1880, and that while the said Reeves was thus in possession he told the witness that the lands belonged to him, Nathan Reeves. The court sustained the plaintiffs' objection to this question, and the defendants duly excepted. Defendants then proposed to prove that the land was conveyed to the defendant Wisdom by Nathan Reeves on January 14, 1886, in payment of a debt due by said Nathan Reeves to the defendant; but upon objection by the plaintiffs to this testimony, the court refused to allow such proof, and the defendants duly excepted. The witness Wisdom testified as to the making of permanent improvements upon the property and the value thereof, and that the rental value of the lands, without the improvements, was nothing.

In rebuttal, the plaintiffs introduced George W. Garmony, as a witness, who testified that he knew Nathan Reeves in his life time, and knew the lands in controversy. The plaintiffs asked the said witness, "If he had ever heard said Nathan Reeves say to whom said lands belonged?" The defendants objected to this question, because it called for illegal and irrelevant testimony, and that any declarations made by said Nathan Reeves were not binding upon the defendants. The court overruled the objection, to which ruling the defendants excepted; and the witness answered: "Nathan Reeves said that the lands belonged to his son, John S. Reeves." The defendants moved to exclude this answer, upon grounds of the objection to the question, and duly excepted to the court's overruling their motion. The witness Garmony was shown the original deed from David Dale to John S. Reeves and the indorsement thereon, and was asked, "If he ever saw said deed before, and when?" He answered that he saw the deed in 1859. The plaintiffs then asked the witness, "If the said transfer was on said deed then?" The defendants objected to this question, because it was illegal and irrelevant, and was not a proper way to show that the transfer was not genuine. The court overruled the

objection, and the defendants duly excepted, and the witness answered: "The transfer was not there in the year 1859." The defendants moved to exclude this answer upon the grounds of the objection to the question, and duly excepted to the court's overruling their motion. This witness further testified that said transfer was on the deed in the year 1868 when he saw it again; and that in the year 1859, when John S. Reeves proposed to sell the land in controversy, Nathan Reeves was present, and did not object to John selling the land, but told the witness that he, witness, would get a good title. The plaintiffs then asked the witness: "If he had ever asked Nathan Reeves how the said transfer came to be on said deed?" The defendant objected to this question, upon the same grounds of the objections interposed to the previous questions, and duly excepted to the court's overruling their objection; and upon the witness answering that said Reeves told him "it is none of your business," the defendants moved to exclude this answer, and duly excepted to the court's overruling their motion.

Upon the introduction of W. G. Brockway, as a witness for the plaintiffs, he testified that he was the cashier of the First National Bank of Gadsden, Alabama, and had had experience in hand-writing all of his life. Upon the witness's attention being called to the indorsement of transfer on the deed from David Dale to John S. Reeves, he said that he had examined it the evening before with his naked eye and with a glass, and he was then asked: "Whether or not, in his opinion, the date, 1851, had been placed there since the original indorsement was put there?" The defendants objected to this question upon the grounds that the witness was not shown to be an expert in such matters, that it was illegal and irrelevant, and that the indorsements could not be attacked in that way. The court overruled the objection, and the defendants duly excepted. The witness answered, that "In his opinion, the date, 1851, had been placed there later, and at some time subsequent to the making of the original indorsement, and that, in his opinion, the body of the transfer and the signatures thereto, both of the transferer and the witnesses, were in the same hand-writing." The defendants objected to this answer, moved to exclude the same, and duly excepted to the court's overruling their objection.

One William Young was introduced as a witness in behalf of the plaintiffs and testified that when John S. Reeves went to the war in 1861, he was in possession of the lands sued for, and that he had heard Nathan Reeves say that the said lands belonged to John S. Reeves.

George W. Hendrix, another witness for the plaintiffs, against the objection and exception of the defendants, testified that he heard Nathan Reeves, while in possession of the lands in controversy, 16 or 18 years ago, say, that while the lands belonged to John S. Reeves, he, Nathan Reeves, would not be disturbed in his possession during his life time.

Mrs. Rhoda Reeves, the widow of John S. Reeves, testified that in 1861 and 1862, Nathan Reeves said to her that the lands belonged to her and her children. The defendants objected to this testimony, and duly excepted to the court's overruling their objection. John H. Reeves, one of the plaintiffs, testified that in 1885 or 1886 Nathan Reeves told him that the lands in controversy belonged to his mother and her children.

Upon the introduction of James S. Reeves, one of the plaintiffs, as a witness, he testified that he was in possession of the 40 acres of land immediately east of the land sued for; and thereupon the plaintiffs asked him, "If he ever demanded of Nathan Reeves the title deeds to said east 40, and if so, when and what did he say?" Defendants objected to this question, and duly excepted to the court's overruling their objection. The witness answered: "I asked him in 1886 or 1887 to give me the papers to the east 40, and he refused to do so." This witness further testified that Nathan Reeves afterwards said that the east 40 and the 40 acres in controversy belonged to the widow and children of John S. Reeves. The plaintiffs offered in evidence the record of a suit pending in the circuit court, wherein the plaintiffs in this suit were plaintiffs and the said Nathan Reeves was defendant, in which said plaintiffs sued for the 40 acres of land lying immediately east of the lands involved in this controversy. The defendants objected to said record being introduced in evidence in this suit, because it was illegal and irrelevant. The court overruled this objection, allowed the record to be introduced in evidence, and the defendants duly excepted to said ruling.

[Wisdom v. Reeves.]

Upon the defendant Wisdom being re-introduced as a witness, he was asked by the defendants: "If Nathan Reeves told him how the transfer came to be put on the Dale deed?" The plaintiffs objected to this question, because illegal and irrelevant, and the witness was incompetent to testify to such declaration. The court sustained the objection, and the defendants duly excepted.

At the request of the plaintiffs, the court gave to the jury the following written charges: (1.) "The court charges the jury that where erasures or alterations appear on an instrument, the burden is on the party offering the instrument to explain the erasures or alterations, and the failure to explain is a circumstance against the validity of the instrument." (2.) "The court charges the jury that the jury may look to the fact that Nathan Reeves admitted the title of plaintiffs a number of times, if that be a fact, to ascertain whether or not the admissions were misunderstood by the witness." (3.) "The law says when verbal admissions are definitely made and precisely identified, they may be the most satisfactory kind of evidence." (4.) "The court charges the jury that it makes no difference if the transfer is valid and all right, if after the transfer was made Nathan Reeves always admitted the title to be in plaintiffs until 1882 or 1885, then and in such case defendants can not recover in this action, and the verdict of the jury must be for the plaintiffs for the lands sued for in the complaint, notwithstanding such transfer." (5.) "The court charges the jury that an adverse possession is an occupancy which disclaims the title of the owner, and if the jury believe from the evidence that Nathan Reeves admitted the title of plaintiffs down to 1885 or 1886, the defense of the statute of limitations is not sustained, and the verdict of the jury must be for plaintiffs for the lands sued for in the complaint." (6.) "The court charges the jury that Nathan Reeves can get no benefit of any time he was in possession of the lands, admitting the title of the lands to be in plaintiffs, and if the jury believe from the evidence that he admitted the title to be in plaintiffs, and never disputed it until in 1882 to John H. Reeves, or in 1885, then and in either event defendant can not recover in this action, and their verdict will be for plaintiffs for the lands sued for here."

(7.) "The court charges the jury that the intention with which land is taken and held, is always material; and there can be no such thing as adverse possession without an intention to claim the title to the lands; and if the jury believe from the evdence that Nathan Reeves never claimed the title to the land in question until 1885 or 1886, the statute of limitations is overcome, and the verdict of the jury must be for the plaintiffs for the lands sued for." (8.) "The court charges the jury that whatever time Nathan Reeves was in possession of the land sued for jointly with the children of John S. Reeves, can not be computed as any part of the statute of limitations, since the law refers the possession to the title." (9.) "The court charges the jury that Nathan Reeves can get no benefit of any time he was in possession of the land jointly with the children of J. S. Reeves since the law refers such possession to the children of J. S. Reeves, and not to Nathan Reeves." (10.) "The court charges the jury that if they believe from the evidense that the transfer is a valid one, and no forgery, yet, if they further believe that Nathan Reeves, whilst holding the lands in possession under the transfer, always admitted they were the lands of plaintiffs, until 1885 or 1886, the statute of limitations is overcome, and the verdict of the jury must be for plaintiffs for the land sued for in the complaint." The defendants separately excepted to the giving of each of these charges, and also separately excepted to the court's refusal to give each of the following written charges requested by them: (1.) "The court charges the jury that if they believe the evidence they will find a verdict for the defendants." (2.) "The court charges the jury that the transfer on the back of the deed read in evidence transfers to Nathan Reeves the legal title to the lands mentioned in the deed." (3.) "The court charges the jury that if they believe from the evidence that the transfer on back of the David Dale deed was executed by John S. Reeves in 1858, or any other time before his death, then the title to said land passed to Nathan Reeves, and even a change of the date thereafter by Reeves would not divest the title out of Nathan Reeves." (4.) "The court charges the jury that if they believe from the evidence that J. S. Reeves executed the transfer endorsed on the David Dale deed, and delivered said deed and transfer to

Nathan Reeves, then this passes the legal title to the land mentioned in the deed to him, notwithstadning they may believe from the evidence the date of the transfer has since been changed." (5.) "The court charges the jury that if they believe from the evidence that John S. Reeves executed the transfer endorsed on the deed of David Dale read in evidence to them, and that he delivered said deed so endorsed to Nathan Reeves, then this was sufficient to pass the legal title to Nathan Reeves to the land described in the deed." (6.) "The court charges the jury that the transfer read in evidence to them on the back of the David Dale deed is read to them as an ancient deed, self-proving, and is presumed to have been properly executed and attested by the witnesses, as it purports to be, and the burden is on the plaintiffs to show the contrary." (7.) "The court charges the jury that the word 'assign' contained in the transfer, endorsed on the David Dale deed, is sufficient to convey the legal title to the lands described in said deed." (8.) "The court charges the jury if they find for the plaintiffs they must also ascertain the rental value of the lands sued for for the present year, and return the amount to the court." (9.) "The court charges the jury that if they believe that Nathan Reeves had a life estate in the land sued for, and that he died last summer, then plaintiffs can not recover in this suit." (10.) "The court charges the jury that if they believe from the evidence that the defendant John H. Wisdom bought the land in 1886, and has been in possession thereof ever since, claiming the same as his own, in good faith, then he has such possession as will entitle him to pay for permanent improvements." (11.) "The court charges the jury that an admission by Nathan Reeves that the title to the land in controversy was in or belonged to Mrs. Rhoda Reeves and the plaintiffs, would not authorize the jury to find that he admitted the land belonged to plaintiffs."

There was judgment for plaintiffs. The defendants appeal, and assign as error the several rulings of the trial court to which exceptions were reserved.

JAMES AIKEN, for appellant.—1. The indorsement on the deed from David Dale to appellees' ancestor conveyed the legal title to the land to Nathan Reeves,

[Wisdom v. Reeves ]

the grantor of the defendant.—*Lemon v. Graham*, 131 Pa. St. 447; s. c. 6 L. R. A. 663; *Harlowe v. Hudgins*, 84 Tex. 107.

2. The act of 1852 dispenses with the necessity of seals to a conveyance of land, and is a remedial statute, and retroactive in its effect. It, in substance, says, that parties may maintain ejectment on unsealed instruments; and applies as well to instruments executed before, as to those executed after the passage of the act.— *Coosa River Steamboat Co. v. Barkley*, 30 Ala. 120.

3. The court erred in excluding the testimony of Nathan Reeves, which had been taken in a former case between the same parties.—*Patton v. Pitts*, 80 Ala. 373; *Long v. Davis*, 18 Ala. 801; Weeks on Depositions, §§ 471, 472. There is no notice required to be given to the opposite party of the time and place of taking depositions on interrogatories.—Code, § 2803. Notice is only necessary when the depositions of the witness are taken without interrogatories.—Code, § 2802.

DORTCH & MARTIN, *contra*.

HEAD, J.—Action to recover forty acres of land by the heirs of John S. Reeves, deceased, against Wisdom and his tenant, Harcrow. Plea, not guilty, and suggestion upon the record of three years adverse possession and permanent improvements under the betterment act.— Code, §§ 2702 *et seq.* The plaintiffs showed title by government patent to David Dale, September 2d, 1850; and deed from David Dale to John S. Reeves, their ancestor, October 31st, 1851. The defendant, Wisdom, claimed title as a purchaser from said John S. Reeves, and introduced a transfer or assignment indorsed upon the said deed of David Dale to said John S. Reeves, as follows:

"The State of Alabama, Benton County,

December 10, 1851.

I assign the within title of land unto Nathan Reeves from me and my heirs forever, this the day and date above written.

Witness:                         (Signed) John S. Reeves."
    James K. McKinney,
    G. T. Reeves."

He then introduced a deed from Nathan Reeves and

wife to himself January 14th, 1886, and gave evidence tending to show adverse possession for ten years and more by said Nathan Reeves, and by himself for more than three years before this suit was brought. He also gave evidence of permanent improvements and their value, the value of the land and use and occupation, in conformity to section 2703 of the Code.

If the transfer of the Dale deed to Nathan Reeves, hereinabove set out, was executed in 1851, as it purports on its face to have been, it is very clear it was insufficient as a conveyance of the legal title for the want of a seal; the law at that time requiring conveyances of real estate to be executed under seal. The defendants invoke section 2694 of the Code which first became law by the adoption of the Code of 1852. It is set out in that Code as section 2198, in the same language as found in the subsequent Codes down to and including the present, and is as follows: "*Seal not necessary to enable grantee to sue.*—A seal is not necessary to convey the legal title to land to enable the grantee to sue at law. Any instrument in writing signed by the grantor, or his agent having a written authority, is effectual to transfer the legal title to the grantee, if such was the intention of the grantor, to be collected from the entire instrument;" and it is insisted that this enactment retroacts so as to give a grantee the right to maintain or defeat an action upon a conveyance, without seal, executed prior to the statute. The position is untenable. The statute does not dispense with the necessity for a legal title in the plaintiff to maintain, and the defendant to defend, an action at law. It simply dispenses with the seal as essential to the conveyance of the title. A seal being necessary, in 1851, to convey the title, a deed then executed not under seal conferred no right of action at law upon the grantee, and it was without legislative power to cure the essential omission and confer such a right. A new remedy may be given by the legislature to enforce existing rights, but it cannot give the right itself by retroacting on past transactions. To hold as the defendants invoke, would be to declare that the title of John S. Reeves was divested by legislative act and invested in the defendant, as a derivative purchaser, so as to enable him to defeat ejectment. This cannot be done. *Wetzler v. Kelley*, 83 Ala. 440. But the plaintiffs, them-

selves, have given evidence tending to show that the transfer in question was not, in fact, executed until 1859, or subsequently thereto. This testimony proceeds from the witness George W. Garmony, who testifies that he saw the Dale deed in 1859, and that said transfer was not then on it; that he saw it in 1868 and the transfer was then on it. Thus it became a question for the jury to determine whether the transfer was executed, if it was executed at all, prior or subsequent to the statute in question. If prior, it did not pass the title; if subsequent, we are of opinion it did. We think its language is such as to evince the intention of the assignor to transfer the legal title, and, under the influence of section 2694 of the Code, had that effect, if executed after the enactment of that law.—*Lemon v. Graham*, 131 Pa. St. 447; *Harlowe v. Hudgens*, 84 Tex. 107; 5 Am. & Eng. Encyc. of Law, 438; *Webb v. Mullins*, 78 Ala. 111. In view of these principles charges 4, 5, 6, 7 and 10, given at the instance of the plaintiffs, ought to have been refused.

Prior to the institution of the present suit these plaintiffs brought a real action in the court below for the recovery of this land against the defendant Wisdom, and upon the interposition of a plea that defendant was not in the actual occupation of the land at the time of suit brought, but that his tenant actually occupied the same, the plaintiff took a nonsuit. Pending that suit the deposition of Nathan Reeves was taken by the defendant, upon interrogatories filed in the cause. Nathan Reeves afterwards died. On the trial of the present action the defendants offered to read that deposition in evidence. The plaintiffs objected on the ground that they did not have notice of the time and place of taking the deposition. It appears that when the interrogatories were served on their counsel, the counsel, by writing indorsed upon or annexed to the interrogatories, demanded notice of the time and place of taking the deposition. The commissioner failed to give the notice. In all other respects the deposition was regularly taken. It will be seen upon examination of the statute (Code, § 2802), that the requirement of notice to the adverse party of the time and place of executing the commission applies only to open commissions for the examination of witnesses by the parties without written interrogatories. Section

2803 provides for the taking of depositions on interrogatories, and the proceedings are therein minutely prescribed. No such notice as that in question is there required. We hold, therefore, that the deposition of Reeves was, in all respects, legally and regularly taken, and this action being the same as to subject matter and parties, and the witness being dead, it was admissible in evidence on this trial. There are, however, certain portions of the testimony of the witness which, upon objections which were duly made, were properly excluded. These are the statements of the witness of transactions with or statements by the deceased, John S. Reeves. This action is by the legal representatives of John S. Reeves, deceased, claiming the land by inheritance from him. The defendant defends upon the asserted validity of title acquired by the witness, Nathan Reeves, from John S. Reeves. The latter is, therefore, under the statute, incompetent to testify as to transactions with or statements by the deceased John S. Reeves.—*Hodges v. Denny*, 86 Ala. 226; 5 So. Rep. 492. Under this rule the following statements of the witness should be rejected : In the answer to the 8th interrogatory : "The said original came into my possession the day and date it was made," and, "I got said original from John S. Reeves," and so on to the end of that answer ; and the whole of the answer to the 14th interrogatory. The witness was also incompetent to testify to the conversations had with Lafayette Reeves, now deceased, who was a son of John S. and the father of the minor plaintiffs, from whom they directly inherited whatever interest they have in the land, as set forth in the answer to the 16th interrogatory. The remaining portions of the testimony of Nathan Reeves all legitimately tend to prove adverse possession on his part, and are admissible.

The defendant, Wisdom, was not incompetent to prove transactions with or statements by the deceased, Nathan Reeves, while he, Nathan Reeves, was in possession of the land, tending to show an adverse possession on his part. Nathan Reeves, nor his legal or personal representatives are parties to the suit or interested in the result thereof. The testimony of Wisdom is in support of the title of Nathan, and under the rule declared in *Bibb v. Hunter*, 79 Ala, 351 (358) ; *Ala. Gold Life Ins. Co. v.*

*Sledge*, 62 Ala. 566, and *Dismukes v. Tolson*, 67 Ala. 386, was competent. The court erred in excluding it.

It was competent for the plaintiffs to prove by the witness Garmony statements made by Nathan Reeves tending to show that his possession of the land was permissive and in subordination to the title of John S. Reeves, provided those statements were made while Nathan was in possession. Such statements made after he sold to Wisdom and went out of possession are mere hearsay and inadmissible. We observe that the testimony is not confined to the time of Nathan's possession. The burden was on plaintiffs to show that the statements were made whilst the declarant was in possession, and, not having done so, the court erred in receiving the testimony.

There was no error in admitting the testimony of Garmony as to seeing the Dale deed and the transfer thereon in 1859 and 1868 ; nor as to offers by John S. Reeves in 1859 to sell the land, made in the presence of Nathan Reeves.

The objections to the testimony of the witness, W. C. Brookway, were not well taken and were properly overruled.

The criticisms made upon the testimony of Garmony as to statements made by Nathan Reeves, in disparagement of his title and claim to the land, apply alike to the witness Wm. Young.

The testimony of Geo. W. Hendrix and Rhoda Reeves was legal and competent, and properly received.

The objections to the testimony of James S. Reeves in reference to the "east forty," as it is called, were well taken and should have been sustained for obvious reasons.

The record of a pending suit by these plaintiffs against Nathan Reeves for another forty acres of land has nothing to do with this case, and ought not to have been admitted.

It was not competent for defendant Wisdom to testify on his own behalf that Nathan Reeves told him how the transfer came to be put on the Dale deed. It involved proof of a transaction with the deceased, John S. Reeves, and further, in the shape it was presented, was hearsay.

The first charge given at the instance of the plaintiffs was proper.

As the case must be reversed for other causes, we simply remark, in reference to charges number 2 and 3, giv-

28

[Wisdom v. Reeves.]

en for plaintiffs, that they were mere arguments, and ought to have been refused for that reason, if for no other.

Charges 8 and 9 are abstract and ought to have been refused. There is no evidence of a joint possession of the land by Nathan Reeves and the children of John S. Reeves.

In what we have said it has been made sufficiently to appear that charges 1, 2, 3, 4, 5, and 7, requested by defendants, were properly refused. They all assume that, although the transfer may have been executed prior to the statute of 1852, a seal was not necessary to pass the legal title, which, we have seen, is not the law.

There is evidence tending to show that the date of the transfer on the Dale deed had been changed, so as to leave uncertainty, arising from the face of the instrument itself, as to what its true date was. It was offered in evidence by the defendants as an ancient document, self-proving. If executed in 1851, it was more than thirty years old, but under the evidence, as it comes before us, it might have been executed within less than that time. It was for the trial judge to inspect the paper and hear such evidence as might be offered to explain the uncertainty, and determine whether it bore such marks of suspicion, unexplained, as to justify its rejection as an ancient document. The trial judge admitted it in evidence, and his ruling is not before us for review. Being admitted, the jury must have received it as, at least, *prima facie* an ancient document, and the burden was on the plaintiffs to show it was not. We think, therefore, the trial court erred in refusing to give charge No. 6. See on this subject, generally, 1 Am. & Eng. Encyc. of Law, 565, *et seq.*

There was no error in refusing to give charge 8, for the reason that it confines the ascertainment of the rental value of the land to the year in which the trial occurred, even extending beyond the time of the trial. The statute requires the assessment of the value of the use and occupation of land, during the adverse possession of defendants, and those whose estate they have, up to the time of trial, not including the increased value of the use and occupation by reason of the improvements. The charge is bad also because it in effect requires the assessment to be made including such increased value.

[Wisdom v. Reeves.]

Again, we discover no evidence that the defendant made any improvements on the land, and the evidence is in conflict, leaving it a question for the jury, whether the possession of Nathan Reeves, at the time he made improvements, was adverse or not. Improvements made during a permissive holding are not within the purview of the betterment act. What we have said will indicate the vice of charge 10. Whilst the evidence shows without conflict that defendant, Wisdom, was in the adverse possession of the land for three years and more, before the suit was brought, thereby entitling him, as against mesne profits, to pay for permanent improvements made by him and those whose estate he had, made under an adverse holding, yet, as we have said; there is no evidence that he made any such improvements, and the charge fails to submit it to the jury to determine whether Nathan Reeves' possession was adverse or not at the time he made improvements.

Charge 11 is argumentative, and was properly refused.

The matters provable under pleas second and third were provable under the general issue, and defendants had the benefit of them under that plea. There was no available error, therefore, in the refusal of the court to allow these pleas to be filed. The defendant, Harcrow, had the right to file a disclaimer of possession if he saw fit to do so; but his plea that he was a mere tenant of Wisdom and had paid the rent to him constituted no defense, and facts therein averred would not protect him from a recovery by plaintiffs, if they succeed in the action, of mesne profits during the time of his possession.

This disposes of all the questions presented by the record. For the errors mentioned the judgment is reversed, and the cause remanded.

Reversed and remanded.