# Moore v. Heineke.

### Contest of Will.

1. *General demurrer.*—On the contest of a will, a demurrer to one of the grounds of contest, "because it presents no issue of fact or law which avoids said will," is too general to be considered.

2. *Grounds of contest; any number may be alleged; proof of one sufficient; specification of more than one in same plea, not demurrable.*—The statute (Code, §1989), contemplates the allegation of any number of objections to the validity of a will, proof of any one of which is sufficient to defeat the will; the fact that these various grounds of contest are subdivided and numbered, and that one subdivision contains two or more

[Moore v. Heineke.]

objections, does not render it necessary to prove all of those contained in the subdivision, nor make it subject to demurrer.

3. *Pleading fraud and undue influence; facts must be shown.*—In the statement of the grounds of contest of a will, when fraud or undue influence is set up, the facts constituting the fraud or undue influence must be averred with the same particularity required by the general rules of pleading when such issues are sought to be raised.

4. *Averments of fraud must show that testatrix was deceived.*—An averment, as a ground of contest, that the will was procured by the sole beneficiary, "representing himself to testatrix as her lawful husband, when he was not in fact her lawful husband," is insufficient, in failing to show that the testatrix was deceived by the representation.

5. *Depositions on written interrogatories. in contest of will; notice of time and place of taking not required.*—Depositions on the contest of a will, taken on written interrogatories, are governed by section 1835, Code of 1896, and cannot be suppressed because of a failure to give notice of the time and place of taking them. on written demand for such notice.

6. *Cohabitation and repute as evidence of marriage.*—While cohabitation and repute do not make marriage, and there can be no marriage without the mutual consent of the parties, yet cohabitation as man and wife, the rearing of children, the recognition of the relation by the parties themselves, and by their friends and relatives, holding themselves out to the world as husband and wife, are manifestations of the parties having consented to contract that relation *inter se*, and, therefore, circumstances from which the trior of fact may infer that a marriage had in fact been entered into.

7. *Presumption of marriage from cohabitation, etc., rebutted by separation, but evidence still for consideration of the jury.*—Notwithstanding the presumption of an actual marriage from the facts of continued cohabitation, etc., is rebutted by proof of a subsequent permanent separation, without apparent cause, and the actual marriage soon after of one of the parties, such facts are still evidence tending to show, and from which the jury may infer, if sufficiently strong and satisfactory, either an actual ceremonial marriage, or an actual consent or agreement to be man and wife, which, when followed by cohabitation, constitute a valid common law marriage.

8. *Declaration of cohabiting parties before and after separation.* The declarations and conduct of the cohabiting parties, while living together, are admissible evidence of marriage as of the *res gestæ;* but declarations by one of the parties after they have permanently separated, in a suit in which such party

[Moore v. Heineke.]

is in no way interested, are mere hearsay, and not admissible.

9. *Undue influence defined; not every fraud is.*—While undue influence is a species of fraud, yet there are many kinds of fraud which do not constitute undue influence; the latter must be tantamount to coercion, and, in a measure at least, destroy the free agency of the testator, and constrain him to do that which, if there had been no constraint, he would not have done; it involves the substitution of the will of another for that of the testator.

10. *Deception, when such a fraud as will vitiate a will.*—Deception and misrepresentation deliberately practiced on the testator for the purpose of procuring the execution of a will, if in fact he is deceived thereby, is such a fraud as will vitiate the will thus procured.

11. *Testatrix must be deceived.*—Where testatrix devised all her property to her husband, and the evidence tends to show that at the time of the marriage, he had a living wife, but there is a total lack of evidence tending to show that, at the time testatrix executed the will, she was deceived as to the past life of her husband, and hence that the execution of the will was induced by any deception and fraud, such evidence will not support a plea of fraud on the contest of the will and it is error to refuse to so instruct the jury.

12. *Testamentary capacity; when a question for the jury.*—Evidence which tends to show that the testatrix was of unsound mind a short time prior to and after the execution of the will, and that she died from acute mania about three weeks thereafter, although it is not shown that the unsoundness of mind was of a permanent character, such as, when once shown, the law presumes to continue, is sufficient to submit the issue of testamentary capacity to the jury.

13. *Duration of cohabitation admissible, although a portion thereof in state where common-law marriage invalid.*—It is always competent, on an issue of marriage *vel non*, to show the duration of the cohabitation; and cohabitation in a state where a common-law marriage cannot be contracted is admissible in evidence to strengthen the presumption that the former cohabitation in a state where a common-law marriage is valid, was lawful.

14. *Charge ignoring undisputed fact.*—No injury results from the giving of a charge failing to hypothesize a fact and submit its determination to the jury, which is admitted by the undisputed evidence.

15. *Burden of proof.*—A charge placing the burden on the proponent to disprove undue influence, misplaces the burden of proof.

APPEAL from Jefferson Probate Court.

Tried before Hon. M. T. PORTER.

The pleadings, with the questions presented thereon,

and all the material facts of the case, are shown by the opinion. The court refused the following charges requested by proponent: 1. The court charges you that the contestants have failed to prove the averments made in the ground of contest numbered three, and that upon that ground your verdict must be in favor of the proponent. 2. The court charges you that the contestants have failed to prove the averments made in the grounds of contest numbered five, and that upon the fifth ground of contest your verdict must be in favor of the proponent. 4. The fifth ground of contest avers conjointly that the testatrix was of unsound mind, and also that the will was procured by fraud and undue influence, and that. having so averred in the fifth ground of contest, unless the contestants have satisfied the jury that the testatrix was at the time of making her will mentally so unsound as to be incapable of making a valid will, was superinduced both by fraud and undue influence, then the court charges you that your verdict must be in favor of the proponent. 5. The court charges you that under the ground of contest numbered three, in order to make out their case, the burden of proof is upon the contestants to establish to the satisfaction of the jury by the evidence, both that the will which is offered for probate was the result of fraud and undue influence; that if the evidence fails to establish that there was fraud, or fails to establish that there was any undue influence, then the jury must find in favor of the proponent, under the third ground of contest. 6. Under the issues in this case which allege fraud and undue influence, the burden of proof is upon contestants to prove the issue as presented, and unless the evidence satisfies the jury that there was both fraud and undue influence, the verdict of the jury upon such issue must be against the contestants and for the proponents. 7. There is no evidence on which the jury can find that the will of Julia E. Gleason was procured by any undue influence; and upon the question of undue influence, the court instructs the jury that they must find in favor of the proponent. 8. The court instructs the jury that they must find a verdict in favor of the proponent on the issue presented by the third ground of contest. 9. The court instructs the jury that the third ground of contest avers both fraud and undue influence, and that having averred that the will was procured by

[Moore v. Heineke.]

fraud and undue influence, the contestant must satisfy the jury, before the jury can find in favor of the con testants on the third ground, both fraud and undue influence existed. 31. That there is no evidence to sustain the charges of undue influence, and that if the jury believe the evidence, they must find a verdict in favor of the proponent upon the allegations of undue influence. 26. That there is no evidence upon which the jury can find a verdict in favor of the contestants on the ground that the testatrix was of unsound mind to such an extent that she could not make a valid will on the 5th day of July, 1894. 27 That upon the issue of testamentary in capacity and unsoundness of mind, the verdict of the jury must be in favor of the proponent. 34. The court charges you that under the statute law of Kentucky, which has been introduced in evidence, that no amount of co-habitation between John F. Gleason and the woman Nellie Jones, called Nellie Gleason, either alone or coupled with reputation, in the State of Kentucky, that they were husband and wife, or admissions made by either of them in that State, that they were married, could make them lawfully married; and it cannot be considered by the jury as evidence in making up your verdict on that subject whether or not John F. Gleason was already a married man when he married Julia E. Weiznecker. 33. The court instructs the jury that they must not, in ascertaining whether or not John F. Gleason was ever married to Nellie Jones in the State of Ohio, regard or consider any testimony of any witness that said Gleason and said Nellie lived together as husband and wife in the State of Kentucky, or that they represented themselves to be husband and wife while they so lived in Kentucky, or that while so living in Covington Kentucky, were reputed to be husband and wife and so regarded by their neighbors in Kentucky. 14. The court charges you that co-habitation and living together as, and recognizing each other as husband and wife, speaking of each other as husband and wife, is only presumptive evidence of actual marriage, and that such presumption is rebutted by the fact, if it is a fact, of subsequent permanent separation without any apparent cause after the marriage, if there was a marriage, of John F. Gleason with Julia E. Weiznecker shortly after the separation. 16. In making their will

[Moore v. Heineke.]

the law does not require that persons shall be able to dispose of property with sound judgment and discretion. It is sufficient if they understand what they are about; and the fact, if it be a fact, that ten days prior to the 5th day of July, 1894, the testatrix, unaided and unassisted, gave specific instructions to J. J. Moore as to terms of her will and how she wanted it written to dispose of her property, is a strong circumstance that the testatrix did possess testamentary capacity at the time when the will was made. The court gave the following charges for contestant: "If the jury believe from the evidence that John F. Gleason and Nellie Gleason agreed to live together as husband and wife, and agreed to be husband and wife in the State of Ohio, then I charge you that John F. Gleason and Nellie Gleason were husband and wife." (4.) "If at the time of the marriage of Julia E. Gleason to John F. Gleason, on the 15th day of July, 1889, you should believe from all the testimony in the case that there was valid marriage existing between himself and Nellie Gleason, then that would be a fraud which would vitiate the will, provided you should further believe that he deceived the said Julia E. Gleason." (6.) "If the jury are not reasonably satisfied from all the evidence that said will was the free and voluntary act of Julia E. Gleason, then their verdict should be for the contestant." (7.) "Before you can render a verdict at all in favor of the proponent, you must be satisfied from the evidence that the testatrix, Mrs. Julia E. Gleason, knew the contents of the instrument offered in evidence, and that she intended to dispose of her property in the manner set forth in said instrument; and the burden of proof is on the proponent to show this." From a verdict and judgment for contestant, proponent appeals, and assigns as error: The rulings of the lower court on the pleadings; the overruling of the motion to suppress certain depositions for failure to give notice of time and place of taking, on demand; the admissions of certain declarations of the alleged first wife after separation; the admission of the declarations of John F. Gleason relating to the policy of insurance; and the giving and refusal of the charges above set out.

JAMES E. WEBB, for appellant.—Having pleaded in one plea two or more separate and distinct defenses, con-

[Moore v. Heineke.]

junctively, the contestant was bound to prove all of them in order to be entitled to a verdict on that plea. *Bridges v. Tenn. Coal & Iron Co.,* 19 So. 495; *Highland Ave R. R. v. Dusenbury,* 94 Ala. 417, 417; *Smith v. Casey,* 28 Ala. 655; *Harold v. Jones,* 98 Ala. 348; *L. & N. R. R. Co. v. Coulton,* 86 Ala. 129; 1 Green Ev. 67; 1 Starkie Ev. p. 401. If it were true that testatrix made an unequal disposition of her property, that alone, without active participation in procuring the will to be executed, would not warrant the jury in finding undue influence.—*Burney v. Torrey,* 100 Ala. 169; *Bancroft v. Otis,* 91 Ala. 279. Cohabitation in Kentucky was not evidence of marriage. *Estell v. Rogers,* 1 Bush (Ky.) 64; *Estate of Grim.,* 17 Am. St. Rep. 796; 131 Penn. St. 199. Neither co-habitation nor reputation is marriage, it is only presumption. 75 Penn. St. 207; *Jenkins v. Jenkins,* 20 Am. St. Rep. 316, 319; *Stewart v. Munchandler,* 2 Bush (Ky.) 280; Bishop on M. & D. 445, 446; 1 Blackstone's Com. p. 439; 2 Kent's Com. p. 75; *Cartwright v. McGowan,* 2 Am. State Rep. 112. Marriage is not presumed from proof of cohabitation and repute with one woman when there is evidence of actual marriage with another.—14 Am. & Eng. Encyc. of Law §522; 1 Bishop on Mar. & Div. 446; *Taylor v. Taylor,* 1 Lee (5 Eng. Enc.) 571; *Chamberlain v. Chamberlain,* 71 N. Y. 423; *Myatt v. Myatt,* 44 Ill. 473; *Jones v. Jones,* 45 Md. 144; *Ib.* 48 Md. 391; S. C. 30 Am. Rep. 466; *Gaines v. Relf.* 12 How. 472, 534; *Goldbeck v. Goldbeck,* 18 N. J. Eq. 42; *Collins v. Collins,* 80 N. Y. 9, 10; 54 Amer. Rep. 454, 455; *Houpt v. Houpt,* 5 Ohio 539; *Hill v. State,* 41 Ga. 484; *Weatherford v. Weatherford,* 20 Ala. 548.

BUSH, BROWN & BUSH, *contra.*—Undue influence is a species of constructive fraud.—*Shipman v. Furniss,* 69 Ala. 555. The fact of the marriage may be proved by circumstances, admissions, or conduct.—Bishop on Mar. & Div. (6 Ed.) 486, 487, 492. If there was a valid marriage in Ohio, the cohabitation in Kentucky was not unlawful.—*Dannelli v. Dannelli,* 4 Bush (Ky.) 51; *Stephenson v. Gray,* 17 B. Monroe (Ky.) 193; *Donnelly v. Donnelly,* 8 B. Monroe 113.

BRICKELL, C. J.—This was an application to the

court of probate by the appellant for the probate of a paper writing purporting to be the last will and testament of Julia E. Gleason, deceased. The application was contested by the appellee, a sister and of the next of kin to said Julia, by the filing of five separate specifications of causes of contest. The first denied the execution of the paper writing by the deceased, and the second affirmed she was of unsound mind at the time of execution. The third alleged in general terms that the execution of the will was induced by John F. Gleason, "by and through fraud and undue influence." To the fourth a demurrer was sustained, and it does not require further notice. The fifth alleged unsoundness of mind, and that the execution of the instrument "was obtained by one John F. Gleason, representing himself to testatrix as her lawful husband, when in fact he was not her lawful husband, and by and through the fraud and undue influence exercised by John F. Gleason upon said Julia Eva Gleason."

The first ground of demurrer to the third ground of contest—"because it presents no issue of fact or law which avoids said will"—is not a sufficient specification of any objection, as required by the statute, and is therefore too general to be considered.—Code, 1886, §2690. The cause of demurrer must be specifically assigned, in order that defects in the pleading may be distinctly and particularly pointed out, so that the party pleading may certainly be apprised of them from what appears in the demurrer itself, and not from the argument thereof, and, if he can, cure them by amendment.—*Sledge v. Swift*, 53 Ala. 114. The objection that this ground of contest states two distinct and separate objections to the validity of the will, namely, fraud and undue influence, is not well taken. Under our system of pleading, the fact that a plea is double is not an available defect.—*Bolling v. McKenzie*, 89 Ala. 476; *Corpening v. Worthington*, 99 Ala. 544. Even were it otherwise, the statute contemplates the allegation or specification of any number of objections to the validity of the will, and the fact that objections in a particular case, are separated and numbered, as if they were separate pleas, and two or more such objections were in one numbered specification, will not render the specification demurrable.

The specification numbered 5 sets up three distinct

[Moore v. Heineke.]

objections to the validity of the will, and the demurrer to this ground is directed to all these objections jointly. In the case of *Barksdale v. Davis*, 114 Ala. 623, we held that in the statement of the grounds of contest, when fraud or undue influence is set up, the facts constituting the fraud or undue influence must be averred with the same particularity required by the general rules of pleading when such issues are sought to be raised. The averment in this ground of contest that the execution of the will was procured by fraud and undue influence was, therefore, insufficient. And the averment that the will was procured by John F. Gleason, the sole beneficiary, "representing himself to testatrix as her lawful husband when in fact he was not her lawful husband," was insufficient because it did not show that the testatrix was deceived by the representation. But the averment that, at the time of the execution of the will, testatrix was of unsound mind was clearly sufficient; and inasmuch as the demurrer was directed to all the specifications of contest jointly, one of which was sufficient, the overruling of the demurrer was not error.

The statute (Code 1886 §1994, Code 1896 §4292) provides that for the trial of the contest of the validity of a will, "depositions of witnesses may be taken in the like cases, for the same causes, and in the same manner, as depositions are taken in civil causes in the circuit court." The taking of such depositions is therefore governed by the provisions of sections 2802 and 2803 of the Code of 1886 (Code, 1896, §§1834, 1835), and not by rule 53 of Chancery practice. Section 2802 applies only to open commissions for the examination of witnesses without interrogatories, while section 2803 applies to the taking of depositions by written interrogatories. The latter section makes no provision for the giving of notice of the time and place of taking the deposition, and does not require the probate judge to instruct the commissioner to give such notice. The failure to give the notice demanded by the proponent by indorsement on the cross interrogatories was therefore no ground for suppressing the depositions.—*Wisdom v. Reeves*, 110 Ala. 431.

The principal objection to the validity of the will relied on by the contestant was that John F. Gleason, the sole beneficiary, at the time he married the testatrix, had a lawful wife living, and that the suppression of this

fact, and the consequent deception practiced on the testatrix, were a fraud which induced the execution of the will. The evidence tending to show the former marriage consisted entirely of testimony as to co-habitation and reputation of marriage between said Gleason and one Nellie Jones. It tended to show that they lived together as man and wife for ten years in Cincinnati, Ohio, and then moved to Covington, Kentucky, where they continued to live together for two years, until June, 1889, when Gleason disappeared; that four children were born to them while they so lived together, who were recognized as his own by Gleason; that they were uniformly and generally reputed to be man and wife among their friends and relatives; and that Gleason had frequently spoken of and acknowledged the woman as his wife while living with her, not only to friends, but also to his mother and sisters. But there was no positive evidence of an actual ceremonial marriage, or of any consent or agreement between the parties to be man and wife, such actual marriage or consent being denied by Gleason, whose credibility as a witness there was evidence tending to impeach. The proponent, in rebuttal of this evidence, proved an actual marriage between testatrix and Gleason, solemnized according to the forms of law in Topeka, Kan., on July 15, 1889, which marriage was not controverted.

It is conceded by counsel for appellant that on an issue of marriage vel non, evidence of co-habitation and general, uniform reputation, and of the declarations and conduct of the parties while living together, holding themselves out to the world as man and wife, is admissible, and that these facts raise a prima facie presumption of marriage, which will prevail until overcome by evidence or neutralized by counter presumptions. But it is insisted that when such evidence is met by proof of a permanent separation, without apparent cause, and a subsequent marriage in fact between one of the parties and a third person soon after the separation, not only is the presumption rebutted, but the evidential value of the testimony as to the former cohabitation and declarations is entirely destroyed, and such testimony cannot be considered by the jury for the purpose of establishing the former marriage. The weight of authority and the decisions of this court support the proposition that the presumption of an actual marriage from the fact of con-

[Moore v. Heineke.]

tinued cohabitation, etc., is rebutted by the fact of a subsequent permanent separation, without apparent cause, and the actual marriage soon after of one of the parties. *Weatherford v. Weatherford*, 20 Ala. 548; Bish. Mar. & Div. §446. But we cannot sustain the proposition that, because the presumption arising from such facts is rebutted, the evidence of these facts is no longer entitled to any consideration, and must be withdrawn from the jury. Notwithstanding such evidence has been deprived of any aid from the presumption, it is still evidence tending to show, and from which the jury may infer, if it be sufficiently strong and satisfactory, either an actual ceremonial marriage or an actual consent or agreement to be man and wife, which, when followed by cohabitation may constitute a valid common law marriage· While cohabitation and repute do not make marriage, and there can be no marriage without the mutual consent of the parties, yet cohabitation as man and wife, the rearing of children, the recognition of the relation by the parties themselves and by their friends and relatives, and their declarations and conduct, holding themselves out to the world as husband and wife, are manifestations of the parties having consented to contract that relation *inter se*, and, therefore, circumstances from which the trior of the fact may infer that a marriage had in fact been entered into. This court has many times held that in criminal prosecutions for bigamy—an offense of which an actual second marriage is an essential ingredient, and where every legal presumption of the innocence of the accused in contracting the second marriage is indulged—the first marriage may be proved by evidence of the former cohabitation of the accused with a third person, and of his declarations.—*Langtry v. State*, 30 Ala. 537; *Williams v. State*, 54 Ala. 133; *Buchanan v. State*, 55 Ala. 154.

The declarations and conduct of the cohabiting parties, while living together, are admissible as of the *res gestæ*. But such declarations made by one of the parties after they have permanently separated and ceased to live together, in a suit in which such party is in no way interested, are mere hearsay, and are not admissible under any of the exceptions to the rule excluding such testimony. Of consequence, the testimony of Spreadbury and Bolan as to the declarations of the al-

[Moore v. Heineke.]

leged first wife, made after Gleason had ceased to live with her, and not in his presence, should have been excluded. That part of the testimony of the former in which he states that, at a time when the parties were living together, Gleason asked him "if everything was paid up (on his policy of insurance) so that the beneficiary, Mrs. Gleason, would have no trouble in getting her insurance in the event any accident should happen," was receivable as an admission on the part of Gleason that the beneficiary was his wife, the witness having previously testified that he had issued to Gleason a policy of insurance on his life in favor of his wife, Nellie, as beneficiary.

While undue influence is a species of fraud, yet there are many kinds of fraud which do not constitute undue influence. The latter must be tantamount to coercion, and, in a measure at least, destroy the free agency of the testator, and constrain him to do that which, if there had been no constraint, he would not have done. It involves the substitution of the will of another for that of the testator. Deception and misrepresentation deliberately practiced on the testator for the purpose of procuring the execution of the will, if in fact he is deceived thereby, is such a fraud as will vitiate the will thus procured; but it is not undue influence if the mind of the testator is left free to make such disposition of his property as he chooses. Such is the fraud which is here alleged. Although the evidence tends to show that at the time Gleason married testatrix he had a wife living, there is a total lack of any evidence tending to show that at the time she executed the will she was deceived as to the past life of her husband, and hence that the execution of the will was induced by any deception or fraud. However strong the probability that a woman would not marry a man with knowledge of such facts as are here shown, or, having married him in ignorance of such facts, would not, after becoming informed of them, give all her property to him by will, the law will not presume that she had no such knowledge from the mere fact that she did marry him, and did devise all her property to him. There is also an entire want of evidence to show that any undue influence was exercised upon the mind of the testatrix. For these reasons charges numbered 1, 7, 8

and 31, requested by the proponent should have been given.

Many of the charges requested by the proponent assert the proposition that where two or more objections to the validity of the will are alleged in one subdivision of the grounds of contest, and the proponent joins issue thereon, the contestant cannot have a verdict, unless he proves all the objections stated in such subdivision. We think such charges were properly refused. Section 1989 of the Code, as we have said, contemplates the allegation of any number of objections to the validity of the will, proof of any·one of which is sufficient to justify the rejection of the will. The fact that these various objections are subdivided and numbered, and that one subdivision contains two or more objections, does not render it necessary to prove all of those contained in such subdivision. Many of the charges also exact too high a degree of proof, in that they require the evidence upon which a verdict is asked to satisfy the minds of the jury. Evidence is sufficient to justify a verdict if it reasonably satisfies and convinces the mind.—*Torrey v. Burney,* 113 Ala. 496; *Prince v. State,* 100 Ala. 146.

There was evidence tending to show that the testatrix was of unsound mind a short time prior to and after the execution of the will, and that she died from acute mania about three weeks thereafter, although it was not shown that the unsoundness of mind was of a permanent·character, such as, when once shown, the law presumes to continue. However little weight this evidence was entitled to, and however cogent the evidence in rebuttal, it was sufficient to justify the submission of the issue to the jury, whose province alone it was to determine its weight. Charges 26 and 27 were, therefore, properly refused.

Although the statutes of Kentucky declare every marriage void unless solemnized in the manner provided therein, and a common-law marriage cannot be contracted in that State, yet evidence was properly admitted to show that the cohabitation, which began and continued for ten years in Ohio, where the common-law is presumed to prevail and where a common-law marriage is valid, in the absence of a statute expressly prohibiting such marriages, was continued for two years longer in Kentucky. Such evidence was not admissible to prove

that the marriage relation grew out of the co habitation in Kentucky, or that the cohabitation became lawful in Kentucky by the parties agreeing in that State to be man and wife; but it was clearly admissible to strengthen the presumption that the cohabitation in Ohio was lawful. It is always competent, on an issue of marriage *vel non,* to show the duration of the cohabitation. Charges 33 and 34 were, for these reasons, properly refused. Charge 14 requested by the proponent, asserts a correct legal proposition. As has already been stated, the presumption of marriage arising from cohabitation, etc., is rebutted by the subsequent permanent separation of the parties and the marriage of one of them soon after the separation. The word "after" before the words "the marriage," in the charge, is probably a misprint, and should have been "and." Charge 16 gives undue emphasis to the fact stated therein in asserting that it is a "strong circumstance" tending to show testamentary capacity. The weight to be given to this fact was a proper subject of argument before the jury, but should not be emphasized in a charge.

The charge given at the request of the contestant, which asserts that Gleason and the alleged first wife were in fact husband and wife if they "agreed to live together as husband and wife, and agreed to be husband and wife in the State of Ohio," ignores cohabitation following the agreement as an element of a valid marriage by mere agreement without solemnization.—*Ashley v. State,* 109 Ala. 48; *Mickle v. State,* (Ala.) 21 So. 67; *Farley v. Farley,* 94 Ala. 503. But, as the fact of cohabitation was not disputed—was, in fact, admitted— the proponent was not injured by the charge. Charge 4, given at the request of contestant, should have been refused. The fact that, at the time Gleason married testatrix, he had a wife living would not vitiate the will, unless the testatrix was deceived and executed the will in ignorance of the fact, which the evidence fails to show. Charge 6 misplaces the burden of proof as to undue influence; and charge 7 exacts too high a degree of proof. For the errors pointed out, the decree of the probate court is reversed, and the cause remanded.

Reversed and remanded.