# Campbell *et al. v.* Bates.

*Statutory Action of Ejectment.*

1. *Deed; interlineation in description, when not evident mark of suspicion.*—The writing of the word "fourth" over the word "quarter" (improperly spelled "qauter") is not such an evident mark of suspicion, as would authorize the court to refuse to allow the deed to be introduced in evidence.

2. *Same; alterations in; genuineness of signature, question for the jury.*—The questions, as to whether there have been alterations in the deed, or as to the genuineness of the signature thereto, are properly left to the jury.

3. *Evidence; ancient deed, admissible in evidence without proof of execution.*—A deed thirty years old, coming from a proper custody, is admissible in evidence without proof of its execution.

4. *Same; proof of handwriting.*—The handwriting of a purported signer of an instrument cannot be introduced in evidence, as a test of the genuineness of the signature.

[Campbell, *et al.* v. Bates.]

5. *Adverse possession; statute of limitations.*—If the period, during which a grantor of lands held adverse possession thereof, when added to an immediate succeeding period, during which the grantee held possession under the deed, amount to ten years, the title to the lands becomes vested in the grantee under the statute of limitations.

6. *Evidence; declaratory statements of party in possession; what not admissible in evidence.*—Testimony that a party, while in possession of land, had been heard to say he had lost his deed thereto, does not come within the rule allowing proof of statements by a party in possession, explanatory of his possession.

7  *Charge to jury; evidence, undue prominence to particular item.* While it is proper for the jury to consider all of the evidence, yet the court cannot be required to give prominence to any particular phase of the evidence.

8. *Adverse possession; possessio pedis not required of party holding under a deed.*—When a party holds lands under a deed his possession is not limited to *possessio pedis,* but extends to all the lands described in the deed.

APPEAL from Circuit Court of Bibb County.

Tried before the Hon. JOHN MOORE.

This was a statutory action of ejectment, brought by William S. Bates against J. N. Campbell and others, to recover certain lands described in the complaint. The defendants pleaded the general issue.

The plaintiff introduced a deed, purporting to have been executed by one George Stewart in the presence of one witness, R. L. Boyd, and bearing date, September 6, 1855. The plaintiff testified in his own behalf that George Stewart was in possession of the land, described in the deed, from 1844 to 1855, when plaintiff bought it. That none of the land was in cultivation in 1844, except a little garden cleared in that year. There was a house built on the land by George Stewart, before the garden was cleared, and in 1844 plaintiff's father rented the land, and lived in the house, off and on, from 1844 to 1855. He attended to the place for George Stewart. Plaintiff was placed in possession in 1855 by George Stewart, and remained in possession till 1861, when he went into the war, sometimes living on the land and sometimes not, but always keeping live stock on it, and claiming the lands as his own. Plaintiff identified the

Stewart deed to plaintiff in 1855, by George Stewart, and which had been in plaintiff's possession ever since. Plaintiff testified that Boyd, the subscribing witness, was present when the deed was executed, and was now dead. Other evidence was introduced, which had a tendency, more or less, to corroborate the testimony of plaintiff. The defendant introduced a Mrs. Watts and her husband, both of whom testified substantially that, about the year 1866, one Johnnie Little was living on the premises in dispute, which was known and called "The Harvey Wright Place," and rented the premises to Mrs. Watt's mother. In June, 1866, Little returned to the premises to gather a wheat crop he had on the land, and lived with Mrs. Watt's mother. Mrs. Watt's mother left the premises at close of the year 1866, but Johnnie Little continued to reside on the land for a number of years afterwards (exact length of time not remembered by plaintiff), but thought to be about six or seven years after 1866. The defendant asked the witness, Mrs. Watts, "Did you ever hear Johnnie Little, while in possession of the land, say that he had lost his deed to the land?" The court sustained plaintiff's objection to this question, and defendants excepted. J. N. Campbell, one of the defendants, then testified that Johnnie Little was on the land in dispute in 1854; that he was living on the land in 1857; and that witness spent the night with Johnnie Little, who was then living on the lands in dispute, in 1872. That he does not remember seeing Little on the land from 1857 to 1872. That witness moved away from the neighborhood in 1857. Witness had never heard of plaintiff claiming the land, till present suit was brought. Witness had known plaintiff's father, but never heard of his ever living on the lands in dispute. Defendants went into possession of premises in 1895, but did not get a deed to the land for some time after. Jasper Little is the only child of Johnnie Little, now deceased; and Francis Morrison, D. C. Parsons, and Mrs. Owen are the only children of Harvey Wright, now deceased.

Defendants then introduced in evidence the following deeds, purporting to convey the lands in dispute: deed from Carroll to McCormick, dated November 1874; sher-

[Campbell, *et al.* v. Bates.]

iff's deed (reciting execution against McCormick) to Berney National Bank, Feb. 21, 1898; deed from Berney National Bank to J. M. Campbell and J. G. Moore (the defendants) March 25. 1898; deed from Jasper Little to defendants, May 25, 1897; deed from Francis Morrison to defendants, Sept. 8, 1897; deed from D. C. Parsons to defendants, Sept. 29, 1897; deed from Mrs. Owens to defendants, Oct. 8, 1899. The defendants introduced testimony to prove that Harvey Wright lived on the disputed premises in 1860, and that, subsequently, Carroll lived on the premises. The defendants introduced a number of witnesses, whose testimony tended to prove that the name of Boyd, affixed as a witness to deed from George Stewart to plaintiff, was not the genuine signature of Boyd, and also examined experts in handwriting, whose testimony tended to show that the body of the deed, the name of the grantor and the name of the attesting witness to the Stewart deed were all in the same handwriting. The defendants then offered in evidence other writings and signatures of the grantor Stewart and the witness Boyd, for comparison by the jury, but, on objection of plaintiff, the court excluded the other writings, and defendants excepted. In rebuttal plaintiff introduced evidence, the tendency of which was to establish the genuineness of the signatures to the Stewart deed. The defendants asked the court, among others, to give the following charges: C. "I charge you that, if you believe from the evidence, the name of R. L. Boyd, as appears in said deed, is not his genuine signature, then your verdict must be for the defendant." E. "I charge you that you must believe from the evidence in this cause to your reasonable satisfaction that William S. Bates' claim to this land was bona fide, and that he held it in his possession under such bona fide claim, before you can find your verdict for him, and in judging of the question whether or not such claim was bona fide you can take into consideration the undisputed fact that the plaintiff left the State of Alabama in the year 1862, and remained away without claiming the land in any way, other than keeping the deed, till the year 1902." F. "I charge you, gentlemen of the jury, that if plaintiff is entitled to re-

[Campbell, *et al.* v. Bates.]

cover any portion of the lands sued for, it is only such portion of same that was actually occupied for a period of ten consecutive years by George Stewart, and those holding under him."

The court refused each of the foregoing charges, and the defendant excepted to each of said rulings. There was a verdict for the plaintiff, and from the judgment thereon, defendants appealed. The rulings of the lower court, insisted upon as error, sufficiently appear in the opinion.

LOGAN & VANDEGRAFF and W. W. LAVENDER, for appellants.—The Stewart deed should have been excluded from the jury.—*Sharp v. Orme,* 61 Ala. 263; *Ala. State Land Co. v. Thompson,* 104 Ala. 570; *Wisdom v. Reeves,* 110 Ala. 418.

The signatures of George Stewart to the records of the commissioners' court should have been admitted in evidence, for purpose of comparing them with his alleged signature to the deed.—*Bestor v. Roberts,* 58 Ala. 331; ·*Kirksey v. Kirksey,* 41 Ala. 624; 1 Greenleaf on Ev., § 580 *et seq.;* 1 Brick Dig., 879, § 1078; 3 Brick. Dig., 289, § 626.

DANIEL COLLIER, *contra.*—A plaintiff may recover in ejectment by showing a grant from one in possession.— *Florence Building & Inv. Co. v. Scholl,* 107 Ala. 533; *Mills v. Clay,* 73 Ala. 359; *Eagle & Phoenix Mfg. Co. v. Gibson,* 62 Ala. 373; *N. C. & St. L. Ry. v. Mathis,* 109 Ala. 377; *Bernheim & Co. v. Horton,* 103 Ala. 384.

One in possession of land under color of title will be considered as in possession of all the lands.—*Woods v. Montevallo Co.,* 84 Ala. 565; *Burks v. Mitchell,* 78 Ala. 61.

The question of adverse possession, and the question as to the genuineness of the signature of the deed to plaintiff, were properly left to the jury.

SIMPSON, J.—This was an action of ejectment by appellee (plaintiff) against appellants (defendants), the judgment being for the plaintiff.

There are numerous assignments of error, but, as those insisted upon are treated of in appellant's brief, without reference to their number, we will take them up in the order indicated in said brief.

1. The 3rd assignment relates to the objections to the introduction of the deed of Sept. 6th, 1855, from Stewart and wife to William S. Bates, the father of plaintiff, and the first "Mark of suspicion" which is called to the attention of the Court (in the original deed which is before the Court), is that the word "fourth" after the words "North East" seems to be written over some other word. The alteration seems to be by writing the word "fourth" over the word "quarter" (improperly spelled "quater.") However that may be, it is evidently a mere correction of a word, in the description of the land, and not only does it not work any special benefit to the plaintiff, but no other word than quarter or fourth (being synonymous) can be conceived of as being appropriate at this place, as there is no other subdivision, according to the manner of describing lands in this State, which would be intelligible. Consequently, we hold that this was not such an evident mark of suspicion as would authorize the court to refuse to allow the deed to be introduced in evidence. Both this matter and the questions whether the body of the deed and the signatures were in the same handwriting, and also whether the two signatures, and that of the witness, were in the same handwriting, were questions for the jury to consider, with the aid of expert testimony, and other evidence.—*Sharpe v. Orme,* 61 Ala. 263; *Ala. State Land Co. v. Thompson,* 104 Ala. 570; *Rarisies v. Alston,* 5 Ala. 297; *Hart v. Sharpton,* 124 Ala.

2. While it is true that a deed, not recorded within the time required by statute, is not self proving, yet "A deed thirty years old is admissible, without proof of its execution, and when the only objection to its admissibility is the failure to prove its execution (or the fact that it had not been recorded within the time prescribed by statute), the appellate Court will presume in favor of the ruling of the court below, that the paper came from the proper custody."—*Alexander v. Wheeler,* 78 Ala. 167.

The so called marks of suspicion, in this case, were not such as went to the date of the instrument, hence the court was not called upon to solve any uncertainty as to its date.—*Wisdom v. Reeves,* 110 Ala. 418, 434.

3.   There was no error in the court's sustaining objections to the introduction of the signatures of George Stewart, to the records of the commissioner's court, for the purpose of comparing them with the signature of the deed.—*Bishop v. State,* 30 Ala. 34; *Gibson v. Trowbridge Furniture Co.,* 96 Ala. 358.

4.   There was conflict in the testimony, so that it would not have been proper for the court to have given the general charge, or either of the other charges requested by defendant, which, though stated in different words, really amounted to the same, in substance, as the general charge.

The plaintiff's testimony tended to show possession in Stewart and himself, under Stewart from 1844 to 1861, and possession in himself alone, under the Stewart deed, from 1855 to 1861, and, while there was testimony on the part of defendant which tended to contradict the plaintiff's testimony, and to show that, during a portion of that time, one Little, from whom defendants claim title, was in possession, yet these conflicts emphasize the fact that it was for the jury to take into consideration all of these matters, and determine, under the charge of the court, whether the deed was genuine or not, and whether plaintiff proved such possession thereunder, as color of title, as entitled him to recover against defendants, whose first color of title was in 1897, and who did not prove any possession in themselves at all.

5.   If the possession of Stewart, and the succeeding possession of the plaintiff under the deed (if it was genuine), amounted, together, to ten years, then no adverse possession thereafter, under color of title, for a less period than ten years would divest the title from plaintiff, and if plaintiff went into possession under the deed, his possession was of the entire tract described in the deed.— *Pittman v. Pittman,* 124 Ala. 306; *Malone v. Arends,* 116 Ala. 19.

[Campbell, *et al.* v. Bates.]

6.   If Stewart was in possession in 1865, and conveyed to plaintiff, who went into possession then and retained possession until 1861, he was entitled to recover, as against these defendants, unless their testimony showed subsequent adverse possession for ten years, either in themselves or in some one from whom they have derived title, all these questions, including the question of *animus revertendi* on the part of the plaintiff, were questions for the jury to decide in this case.—*McCall v. Doe ex dem. Pryor*, 17 Ala. 533; *Smith v. Lorillard*, 10 Johnson, 339; *Crosby v. Pridgen*, 76 Ala. 385; *Wilson v. Glenn*, 68 Ala. 383; *Doe ex dem. Wills & Hooper v. Clayton*, 73 Ala. 359; *Reddick v. Long*, 124 Ala. 262.

While it is true that, if plaintiff's claim was based entirely on a prior possession which had not ripened into title, if the evidence showed that he had abandoned the land, without the *animus revertendi*, and that the defendants had actually taken possession, under color of title, the plaintiff could not recover, yet, in view of the facts that there was evidence from which the jury might have found that plaintiff's title had become perfect by ten years' possession in himself and his grantor, and while, although he was away a long time, there was no positive proof on the subject of *animus revertendi*, and the further fact that there was no proof of actual possession on the part of defendants, it was not a case for the court to take from the jury.—Cases *supra; Gest v. Beaumont*, 104 Ala. 347.

7.   The questions to the witness, Mrs. Watts, as to what she heard Johnnie Little say about losing his deed, were properly excluded.   Such testimony as that does not come within the rule allowing proof of statements by a party in possession, explanatory of his possession. —*Daffron v. Crump*, 69 Ala. 77.

8.   The charge marked "C," requested by defendant, was properly refused, as the entire case did not hang on the one point, as to whether the signature of the witness Boyd to the deed was genuine.

9.   The charge marked "E," requested by defendant, was properly refused.   While it is proper for the jury to consider all of the evidence, yet the court cannot be

required to give prominence to one item of evidence, by charging the jury that they may consider it. While evidence referred to might have an important bearing on the question as to whether Stewart had abandoned his possession, it could not show whether or not his possession was *bona fide,* while he was in actual possession.

10. Charge marked "F," requested by defendant, was properly refused. If plaintiff went into possession under the deed from Stewart, his possession was not limited to *pedis possessio,* but extended to all the land described in the deed. Also, it has been shown that, under certain facts, of which there was evidence, the plaintiff might be entitled to recover on his prior possession, under color of title, without proving adverse possession for ten years.

There is no error in the record, and the judgment of the court is

Affirmed.

McCLELLAN, C. J., TYSON and ANDERSON, J.J., concurring.