WEATHERFORD vs. WEATHERFORD ET AL.

1. Filiation may be established, at common law, by a satisfactory combination of facts indicating the connection of parent and child between an individual and the family to which he claims to belong; and the principal of these facts are, that he has always bore the name of the person whom he claims as his father ; that the father has treated him as his child, and in that character has provided for his education, his maintenance, and his establishment; that he has been uniformly received as such in society ; and that he has been acknowledged as such by the family.

2. When filiation is once established, the law raises the presumption of legitimacy, and the burden of proof is cast upon those who assert the illegitimacy.

3. But when the evidence, by which filiation is established, also proves illegitimacy the presumption of legitimacy does not arise.

4. The presumption of an actual marriage arising from the fact of cohabitation may be rebutted, by proof of a subsequent permanent separation between the parties, without any apparent cause, and the marriage of one of them soon afterwards.

ERROR to the Chancery Court of Mobile.

Tried before the Hon. J. W. Lesesne.

This bill was filed by William Weatherford, claiming to be the only lawful son and heir of the late William Weatherford, sen'r, and as such entitled to the whole of his estate. It alleges that complainant's mother, Superlamy, was legally married to said Weatherford, sen'r, in 1812 or 1813, according to the customs of the Creek tribe of Indians, to which they·belonged, and among whom they lived; that complainant had been received and treated by said Weatherford, as his lawful son; that said Weatherford afterwards lived with

one Mary Stiggins, in a state of concubinage, and had several children by her; that after said Weatherford's death, said Mary Stiggins sent for complainant, and had him carried to her house in Baldwin county, where she then resided, and that she acknowledged him to be the lawful son of said Weatherford, sen'r, and that he was always received, treated and acknowledged as such by the family, and the community in which they lived; that after the death of Mary Stiggins, one Charles Weatherford took out letters of administration on the estate of said Wm. Weatherford, sen'r. Said Charles Weatherford, and the children of said Mary Stiggins by said Weatherford, sen'r, are made defendants to the bill, and by their answers deny that said Weatherford was legally married to complainant's mother, and assert that he was legally married to said Mary Stiggins.

The chancellor dismissed the bill, holding that the proof was insufficient to es'ablish the legitimacy of complainant.

CAMPBELL, for plaintiff in error.

1. The facts establish the filiation of the plaintiff. He bears the name of Wm. Weatherford, whose paternity he claims. He was received in the family as his son, and treated by the wife of Weatherford and his children as the child of Weatherford. He is so esteemed in the community. He was recognized by his father. Code Napoleon, Book 1, Tit. 7, Ch. 2, § 322.

2. The filiation of Wm. Weatherford being established, a presumption arises of his legitimacy. The burden of proof is shifted to the defendants to prove his illegitimacy. 1 Penn. Rep. 453; 6 Howard (S. C.) Rep. 550–587; Best on Presump. 335; 5 Coke, 89; Hubback on Suc. 250; Best on Ev. 61; 6 Eccl. Rep. 124.

3. The evidence of a marriage between the father and mother of Wm. Weatherford is sufficient. 1 Penn. Rep. 453; 4 John. Rep. 52; 18 John. 346; 2 Dana, 432; 1 Addon's Ecc. Rep. 64; Shelf. Div. 99; Hubback on Suc. 250.

4· The legal consequences of the marriage are to establish the legitimacy of the plaintiff and his title to inherit. 8 Ala. Rep. 52; Story's Conf. Laws, 100; 4 En. Eccl. Rep. 489; 3 ib. 468.

5. Complainant is not bound by the settlement in the Orphans' Court. 4 Howard S. C. Rep. 497; 1 Mylne & Keene, 200; 6 Paige, 139; 3 Russ. 136; 2 John. Ch. 614.

6. The lapse of time does not bar him from asserting his claim. 4 Dess. 330; 3 John. Ch. R. 190; Fonb. Eq. 262; 3 Howard S. C. Rep. 333; 4 M. & C. 52.

7. The bill is not multifarious; nor is the objection properly taken. 18 Ala. 439; 17 Ala. 422; 15 Ala. 485; 10 Ala. Rep. 310.

8. There is no demurrer for want of parties; nor could the court in the first instance dismiss the bill for want of parties. 1 Stew. 566; 18 Ala. Rep. 576; 12 Ala. Rep. 101–104.

9. In no case has the want of proper parties been allowed to sustain an improper decree on the merits. The absence of the parties does not go to the equity of the case.

10. The objections to the bill are hypercritical. The statute of distributions is in favor of the child. The averment that the plaintiff is the lawful child, then, shows sufficiently the character of his claim. The averment is only of matter of substance.

11. The averment of heirship is sufficient. 1 Cox Ch. Cases, 421; 1 Cox Ch. Cases, 197.

HOPKINS and PERCY WALKER, for defendants.

The bill is multifarious. The defendant, Charles Weatherford, as administrator, had no interest in the real estate; and there is no allegation in the bill that he had any interest in his individual right. The bill is therefore bad on demurrer, and should be dismissed. It might be dismissed by the court on the hearing, without demurrer or objection from any defendant. Story's Eq. Pl. §§ 271, 284, 530, 540; 2 Howard's U. S. 642–5; 2 Anst. 469, case of Ware v. Duke of Northumberland, cited in note n, page 306 of Story's Eq. Pl., edition of 1844; 10 Ohio Rep. 456. The objection of multifariousness goes to the whole bill, and if sustained, it should be dismissed. 16 Ala. 87.

The bill shows that Wm. Weatherford, the deceased, died in 1823, and that the mother of complainant survived him. If she was the wife of Wm. Weatherford, deceased, and survived him, as the bill alleges, and the complainant, as he

asserts, is the only legitimate child of Wm. Weatherford, deceased, she was entitled to half the personal property of the husband. As she is dead, her personal representative only has the right to recover her share of the property. If a bill could be maintained at all against Charles Weatherford and the other defendants, the personal representative of complainant's mother would be an indispensable party. Story's Eq. Pl. §§ 72, 73, 77, 170, 219; 1 Stew. 542; 3 Pr. Williams Rep. 349; 1 Williams' Ex. 396–411; 17 Ala. 816; ib. 40. The objection for want of proper parties may be taken on demurrer, or at the hearing, by any defendant, or may be taken by the court. Story's Eq. Pl. § 75; 18 Ala. 575; 16 Ala. 625.

The bill does not indicate whether the complainant claims the whole of the property, or one-third, or one-fourth. It is therefore uncertain, and demurrable for that reason. Story's Eq. Pl. §§ 241, 245, 254, 257; 4 Con. Eng. Ch. Rep. 158; Wigram on Discovery, 13 Law Lib. 35. The defendants do not know from the bill what case they must prepare to meet. 13 Ala. 694–696: 3 Mer. 667, case of Carlton v. Leighton.

There is no allegation in the bill that the alleged marriage of the complainant's mother took place in the country, which it is stated, was governed by the Indian laws relating to marriage. The complainant therefore shows no title to what he claims, because he does not show that the marriage was valid according to the laws of the place where it is alleged to have been entered into. 10 Watts, 158; 7 Watts, 353. There is no fixed, universal law as to marriage. The law of one country requires to make a marriage valid what would not constitute it in another. Hence the necessity for such allegations in the bill as are relied on to show a marriage. Story's Conflict of Laws, §§ 113, 121, 122–3; Poynter on Marriage and Div. 13 Law Lib. 96 et seq.; Shelford on Marriage and Div. 33 Law Lib. 116 et seq.

The bill is bad, because it shows no title. Story's Eq. Pl. §§ 503–508. There is no allegation in the bill of what the Indian laws required to constitute a marriage. It is therefore fatally defective. Story's Eq. Pl. § 241; 6 Howard (U. S.) 589; Wigram on Discovery, 13 Law Lib. 35–6.

The evidence greatly preponderates against the allegation

in the bill, that the mother of complainant was the wife of Wm. Weatherford.

It is not denied that cohabitation and reputation, &c., may in certain cases be *prima facie* evidence of marriage, but an examination of the cases, in which it has been so ruled, will show, that the testimony was infinitely stronger and more satisfactory than that adduced by the plaintiff in error. See 8 B. Monroe, 113; 12 S. & M. 9–56; 1 H. & McH. 152; 8 Gill & J. 50; 4 Johnson, 52; 2 Haywood, 102; Taylor's Conf. Law and Eq. Rep. by Battle, 72. These cases show that there must be proof, not only of cohabitation and reputation, but of acknowledgment. More is required to authorize presumption of marriage than mere proof that a man and woman lived together. 8 Paige, 574–582; 4 B. Monroe, 575.

Cohabitation will authorize no presumption of marriage, unless that cohabitation is shown to have been of a permanent nature. A mere temporary commerce will not answer. See 11 Ala. 838–9, and Shelford on Marriage and Div. in 33 Law Lib. pp. 26–30.

The presumption arising from cohabitation, &c., will be rebutted by proof of long separation, &c. 18 Johnson, 346.

Again: It is not shown that proof of living together as man and wife, constituted a valid marriage, by the Indian laws.

The complainant has made no proof that the requisite ceremonies attended the union between his mother and Wm. Weatherford, deceased, nor has he alleged in his bill that they did. 6 Howard U. S. 587; 10 Watts, 168; 7 Watts, 353; 1 Texas Rep. 624–5–6.

The evidence shows that there was a separation between them; and the testimony of Moniac and others proves that under the operation of the Indian laws and customs, this was a divorce. The effect is the same as if there had been a lawful decree. 8 Ala. 48.

The extension of our laws over the Indian territory will not take from an Indian marriage its dissoluble quality. 11 Ala. 826; 5 Humph. 13.

Complainant was born after the separation between his mother and Weatherford, and this rendered him illegitimate under the Indian laws.

He cannot claim any part of his father's estate. 8 Ala. 48. The testimony shows that according to the Indian laws the child inherited from the mother, and not from the father. As to effect of this, see 8 Ala. 48.

The evidence proves that, under the Indian laws, the husband could divorce himself at any time. See 13 Ala. 793.

The proof is conclusive as to the marriage of Wm. Weatherford, sen'r, with the mother of the defendants.

When the proof of a second marriage is clear, a prior marriage will not be presumed from the facts of cohabitation and reputation, for the purpose of invalidating the subsequent marriage, and rendering the issue illegitimate. 1 Penn. Rep. 452; 1 J. J. Marshall, 105.

The burden of proof in this case is upon the plaintiff in error, who insists on the invalidity of the second marriage. 6 Howard U. S. 597.

The remedy of the complainant, if he ever had any, to the personal property of Wm. Weatherford, deceased, is barred by the lapse of six years after he had his full age, and before he filed his bill. 7 Johnson Ch. Rep. 113, 114, 126; Story's Eq. Pl. § 751; Story's Eq. Jurisprudence, 2 vol. pp. 981–2–3; 2 Ala. 555.

As to the half of the personal estate to which the mother of complainant would be entitled, if the bill were true, the claim of her representative is barred by the lapse of twenty years.

Adverse possession of the whole estate was taken by the mother of Alexander and Mrs. Howell, immediately upon the death of Wm. Weatherford in 1823 or 1824.

The statute of limitation began to run against complainant's mother upon the happening of that event. The bar is therefore complete against her and her legal representative.

As the bar of the statute appears on the face of the bill, the defendants can avail themselves of it upon demurrer, without plea. 15 Peters, 272; 22 Law Lib. 313; Story's Eq. Pl. § 503· But here the statute is pleaded, and the evidence proves the bar:

The bar of the statute applies to courts of equity, as to courts of law. 5 Ala. 90; 15 Peters, 272; Story's Eq. Ju-

35

risprudence, 2 vol. pp. 981–2–3 § 1520, and note thereto at p. 984 of edition of 1846.

Even in cases where the law makes no application of the statute, courts of equity will apply it where there has been *laches*, as in this case. Story's Eq. Jurisprudence, cited above; 7 Howard, 258; 2 Jacob & Walker, 191.

CHILTON, J.—Many interesting, and some novel points have been elaborately and ably discussed by the counsel, in the argument of this case; but the view which we feel constrained to take of it from the proof in the record, renders it unnecessary to go into their examination.

The complainant claims to be the legitimate son and sole heir of William Weatherford, deceased, and as such, entitled to his whole estate. Upon this allegation, that is, upon his legitimacy, his title depends.

The answers, which are responsive to the bill, explicitly deny that the said William Weatherford was ever married to the complainant's mother, and they further deny the existence of the main facts charged in the bill, tending to establish the filiation of the complainant.

The burden of substantiating his averments by such proof as, under the rules of chancery practice, will authorize the court in pronouncing for the complainant, is thus cast upon him.

The evidence relied upon to establish the complainant's legitimacy, may be considered under the following heads:

1. Facts tending to establish filiation.

2. Reputation and cohabitation of his father and mother, as man and wife.

3. Proof tending directly to establish a marriage between his parents, according to the custom of the Creek Indian tribe, to which they belonged.

We agree with the learned counsel of the complainant, that the doctrine as laid down in the Code Napoleon, Tit. VII, § 32, respecting the evidence of filiation, is equally the doctrine of the common law: that "the enjoyment of this condition is established by a satisfactory combination of facts, indicating the connection of parent and child between an individual and the family to which he claims to belong." The

principal of these facts are said to be, that the individual has always borne the name of his father to whom he claims to belong; that the father has treated him as his child, and in that character has provided for his education, his maintenance, and his establishment; that he has been uniformly received as such in society, and that he has been acknowledged as such by the family.

We may further concede the proposition insisted on for the complainant, that if there be sufficient proof to establish filiation, the law raises the presumption of his legitimacy, thus shifting the burden of proof on those asserting his illegitimacy.

Upon narrowly scanning the proof, however, we are unable to discover any evidence of filiation sufficient to countervail the force of the positive denials of the answers, especially when we consider it in connection with the opposing testimony.

It may be proper to observe, that in considering the evidence, we should not entirely exclude from our view the fact, that William Weatherford was a person of much notoriety as a military chieftain and leader of his tribe, and that serving in that capacity during the most of the time when it is alleged he cohabited with Superlamy, the mother of the complainant, it is fair to presume, that the impression as to whether his connection with her was lawful or illicit would have been very general, and that the proof of the connection being licit would be more readily obtained than if such connection had existed between less notorious persons.

It is not shown that William Weatherford, the elder, ever saw the complainant. On the contrary, it is proved that Superlamy left his residence in Baldwin county while she was pregnant with the complainant, and never returned; and that the complainant was brought by a relative to the residence of Mary Weatherford, formerly Mary Stiggins, after the death of his mother, and subsequent to the death of said Weatherford; so that the record totally fails to furnish any evidence of filiation, arising from the treatment or recognition of the complainant by William Weatherford, senior.

The proof also sufficiently establishes that Mary Stiggins, *alias* Weatherford, raised complainant and sent him to school,

and said to several witnesses that he was the son of William Weatherford; also, that her children by Weatherford called him "brother," and treated him as a half-brother. But the proof, coupled with the answers, clearly preponderates to establish the position, that neither she nor her children ever recognized him as the *legitimate* offspring of said deceased. Lucretia Sizemore says, Mary Weatherford did not recognize him as a legitimate son of William Weatherford.

Susan Sizemore says, he was not regarded as an heir.

William Sizemore says, Mrs Mary Weatherford did not own him as a lawful son, and that while her children recognized him as a brother, they did not regard him as one of the heirs.

These witnesses were examined by the complainant, and the only proof to show that he was regarded otherwise than as illegitimate by the family, is made by Samuel and Lucretia Edmunds, and they only prove that he was regarded in the family as William Weatherford's son, without stating whether as his legitimate or illegitimate son.

We come therefore to the conclusion, that the proof of filiation is not sufficient, or rather is of that character which, while it proves filiation, disproves legitimacy, and is not sufficient to shift the onus of proof by raising a presumption of legitimacy.

The fact that the complainant was residing in the family of the late William Weatherford, up to and at the time of the division of the property, as proved by W. C. White, that he was then of lawful age, and interposed no objection to the division which was made by order of court, and which proceeded upon the ground of his illegitimacy, and consequent inability to take as heir or distributee, is another circumstance going to corroborate the conclusion, that while his paternity was acknowledged, he was not regarded as the issue of lawful wedlock.

When we come to the proof of reputation and the cohabitation of the complainant's mother and father, we think the decided weight of evidence is against the complainant.

It would unnecessarily swell this opinion, to copy the evidence afforded by the depositions of the several witnesses. upon this head. Samuel and Lucretia Edmonds, and Susan

Sizemore state, that they (Weatherford and Superlamy) were reputed to be man and wife in the neighborhood in which they lived; whereas, on the other hand, William Sizemore, Lucretia Sizemore, Gilbert C. Russell and William Hollinger prove that the connection was reputed to be illicit. Elizabeth Moniac proves that Weatherford "took up" with this woman at the "Holy Ground," where the Indians were generally assembled after the massacre at Fort Mims, during the war, and that complainant was always reputed to be a bastard. This proof fails to show that complainant's claim to legitimacy, as deducible from reputation, can be sustained.

There is no proof of actual marriage according to the Indian customs; and the presumption of an actual marriage from the fact of cohabitation is rebu'ted by the fact of a subsequent permanent separation, without any apparent cause, and the marriage in solemn form of Weatherford to Mary Stiggins, which took place shortly after the separation. See Senser et al. v. Andrew Bower and Wife, 1 Penn. Rep. 452 ; Jackson v. Claw, 18 John. Rep. 346.

Without, however, commenting more at large upon the testimony, we are fully satisfied that the whole proof entirely fails to establish the relation of man and wife between Weatherford and Superlamy, and consequently fails to sustain the claim of the complainant, which is dependent upon proof of that relation.

This view accords with the conclusion attained by the Chancellor, and his decree must be consequently affirmed.

DARGAN, C. J., not sitting.