17 So.2d 166

**SLOSS–SHEFFIELD STEEL & IRON CO. v. WATFORD.**

**6 Div. 208.**

Supreme Court of Alabama.

Feb. 3, 1944.

Rehearing Denied March 23, 1944.

Bradley, Baldwin, All & White, of Birmingham, for appellant.

Wm. B. McCollough, of Birmingham, for appellee.

STAKELY, Justice.

This is an action by Maggie Lee Watford against the Sloss-Sheffield Steel & Iron Company to recover benefits under the Workmen's Compensation Act of Alabama, Code 1940, Tit. 26, § 253 et seq., for the death of her alleged husband, Will Watford, on December 1, 1942, by an accident arising out of and in the course of his employment. The trial court awarded compensation to the plaintiff for herself and her children and the case is now here on petition for certiorari.

The sole question in the case is whether Maggie Lee Watford was the lawful wife of Will Watford at the time of his death. They were married in a ceremonial marriage on March 23, 1932. Thereafter they lived together as man and wife and had seven children as a result of the union. This alleged marriage is, however, seriously disputed by petitioner and, accordingly, it will be necessary to consider the matrimonial activities of both Maggie Lee Watford and Will Watford prior to their marriage.

"Though a man marries ever so often, he can have but one lawful wife living. So long as she is living, and the marriage bond remains in full force, all his subsequent marriages, whether meretricious or founded in mistake and at the time supposed to be lawful, are utterly null and void." Bell v. Tennessee Coal, Iron & R. Co., 240 Ala. 422, 199 So. 813, 814.

We shall consider the matrimonial situation of Maggie Lee Watford and Will Watford separately. In 1922, when Maggie Lee was fifteen to seventeen years of age, she married a man named Allen Washington in the Jefferson County Court of Misdemeanors. She was in court for the purpose of prosecuting him for getting her pregnant. The prosecution ended when Allen Washington procured a license and the marriage ceremony was performed by Judge Abernathy. They had never lived together prior to the marriage and never lived together after the marriage.

In 1923 Allen Washington procured a divorce from Maggie Lee Washington, but she was not given the right by the court to remarry and she never thereafter procured the right to remarry. On the facts stated thus far two applicable principles appear: (1) The marriage of Maggie Lee to Allen Washington was valid even though he married her to escape prosecution for seduction. Newman v. Sigler, 220 Ala. 426, 125 So. 666; Williams v. State, 44 Ala. 24. The subsequent marriage of Maggie Lee to Will Watford was void since no consent to her remarriage had been given by the court. § 23, Title 34, Code of Alabama; Barfield v. Barfield, 139 Ala. 290, 35 So. 884; Gulf States Steel Co. v. Witherspoon, 214 Ala. 529, 108 So. 573; Evans v. Evans, 200 Ala. 329, 76 So. 95.

But the trial court held that it was immaterial that the court never gave its consent to her remarriage, since her marriage to Allen Washington was a nullity. The position of the court was based on its finding of fact that Allen Washington at the time of the events in Judge Aberna-

thy's court was the husband of a woman named Louise by a common-law marriage with her. So we must look to the evidence to see if on any reasonable view of the evidence the conclusion of the court can be sustained. Bell v. Tennessee Coal, Iron & R. Co., supra. On certiorari, we will not weigh the evidence or consider its conflicts. Sloss-Sheffield Steel & Iron Co. v. Alexander, 241 Ala. 476, 3 So.2d 46; Malbis Bakery Co. v. Collins, ante, p. 84, 15 So.2d 705.

■ The record contains evidence tending to show that when Allen Washington went through with the ceremony with Maggie Lee, he was living with a woman named Louise in Kingston, Alabama, as husband and wife under a common-law marriage. Tendencies of the evidence further show that after the ceremony at the court house, he never lived with Maggie Lee, but immediately resumed his relations with Louise.

"In White v. Hill, 176 Ala. 480, 58 So. 444, 447, appears the following definition of a common law marriage: 'To constitute a marriage good and valid at common law —that is, in the absence of a statute otherwise specifically providing—it is not necessary that it should be solemnized in any particular form or with any particular rite or ceremony. All that is required is that there should be an actual and mutual agreement to enter into a matrimonial relation, permanent and exclusive of all others, between parties capable in law of making such a contract, consummated by their cohabitation as man and wife or their mutual assumption openly of marital duties and obligations.'" Gilbreath v. Lewis, 242 Ala. 510, 7 So.2d 485, 487.

■ But it is insisted by petitioner that there was no proof of an actual and mutual agreement between Allen Washington and Louise to enter into marriage. This is true unless such agreement can be presumed from the evidence. As stated, tendencies of the evidence showed "cohabitation and reputation," for its tendencies showed that they lived together openly as husband and wife at Kingston and that there was public recognition of the marriage. If there was "cohabitation and reputation," the mutual agreement to be man and wife could be inferred therefrom.

"The following quotation from Bishop on Marriage and Divorce, to be found in Topper v. Perry, 197 Mo. 531, 95 S.W. 203, 207, 114 Am.St.Rep. 777, is illustrative: 'Cohabitation and reputation are at best only presumptive proofs, and when one of these foundations is withdrawn, what remains is too weak to build a presumption on. There is good sense in the Scotch law, by which cohabitation alone is considered insufficient, and which required in addition habit and repute, because it is said the parties may eat, live, and sleep together as mistress and keeper without any intention of entering into marriage.'" Gilbreath v. Lewis, 242 Ala. 510, 7 So.2d 485, 487. See also Tartt et al. v. Negus, 127 Ala. 301, 28 So. 713.

■ It is further contended by petitioner that since it is undisputed that Allen Washington and Maggie Lee went through a marriage ceremony before Judge Abernathy, it will be presumed that this was a valid marriage, even though the evidence was sufficient to show that Allen Washington and Louise had been previously married. This insistence is on the theory that one attacking the validity of a second marriage has the burden of showing that the prior marriage has not been dissolved by divorce. There is no evidence in the record to show that a divorce was not obtained to terminate the marriage of Allen to Louise, assuming that they had been married. The law on which this contention is made is stated as follows: "The presumption is that the prior marriage has been dissolved by divorce, and the burden rests * * * upon the person seeking to impeach the last marriage, notwithstanding he is thereby required to prove a negative." Sloss-Sheffield Steel & Iron Co. v. Alexander, supra [241 Ala. 476, 3 So.2d 48].

But the foregoing rule has its limitations, which are well expressed as follows: "'However, the presumption of the dissolution of a prior marriage, whether by death or divorce, should be indulged with caution. We apprehend that such presumptions sometimes have been made with very little justification. A rule of law which allows an artificial or technical force to be given evidence, which warrants such presumptions, beyond its natural tendency to convince the mind, and requires courts and juries to presume as true that which probably is false, cannot but be fraught with dangerous consequences. In case there is a conflict of presumptions, it would appear more reasonable that that one should yield which has the least probability to sustain it, rather than that the one in

favor of innocence and of the validity of the subsequent marriage should prevail.' 89 Am.St.Rep. 206." Ex parte Young, 211 Ala. 508, 101 So. 51, 52. See also Bell v. Tennessee Coal, Iron & R. Co., supra.

The trial court found that Allen Washington and Louise were living together as man and wife under a common-law marriage at the time of the ceremony at the court house between Allen Washington and Maggie Lee, and that after the ceremony, he never lived with Maggie Lee. On the contrary, Allen Washington returned immediately to living with Louise and continued living with her until 1923 or 1924. Since the trial court found that Allen and Louise did not separate, the court was justified in rejecting a presumption in favor of the validity of the marriage of Allen Washington and Maggie Lee.

"The weight of authority, and the decisions of this court, support the proposition that the presumption of an actual marriage from the fact of continued cohabitation, etc., is rebutted by the subsequent permanent separation, without apparent cause, and the actual marriage soon after of one of the parties." Moore v. Heineke, 119 Ala. 627, 636, 637, 24 So. 374, 378.

"This court has heretofore held that the presumption of an actual marriage from the fact of cohabitation, etc., is rebutted by the fact of a subsequent permanent separation, without apparent cause, and the actual marriage soon after of one of the parties." White v. White, 225 Ala. 155, 158, 142 So. 524, 526. See also McLaughlin v. McLaughlin, 201 Ala. 482, 78 So. 388; Weatherford v. Weatherford, 20 Ala. 548, 56 Am.Dec. 206.

And so under the tendencies of the evidence which the trial court had the right to accept, although at some points the evidence was meager and in conflict with other evidence, we cannot say that the court was not justified in upholding the marriage of Allen Washington and Louise and thereby invalidating the marriage of Maggie Lee and Allen Washington.

After the ceremony at the court house between Allen Washington and Maggie Lee, she began living with one John Byers as man and wife in January, 1924, and continued so to live with him for several months. At that time she left John Byers and went to Acmar, Alabama, where she met Will Watford and began living in the house with him and his relatives. On March 23, 1932, after having lived with Will Watford as husband and wife since 1929, Will Watford and Maggie Lee were married in a ceremonial marriage at Pell City, Alabama.

John Byers disappeared about 1924 to 1926 and has never since been heard from. Among other reasons for eliminating from consideration the relations between John Byers and Maggie, the court indulged the presumption of his death because of his unexplained absence for seven years. There is no contention in this proceeding that the court was in error in this regard. Accordingly we proceed on the theory that the relations between Maggie Lee and John Byers presented no impediment to her marriage to Will Watford. Under all the evidence the trial court had the right to hold that Maggie Lee was in a position to contract marriage lawfully with Will Watford. This brings us to a consideration of the capacity of Will Watford to contract a valid marriage with Maggie Lee. The evidence shows that Maggie Lee and Will Watford continued to live together until he was killed while working for petitioner at its mine located at Alden in Jefferson County, Alabama. They had moved to Alden from Acmar in about 1932.

The evidence, as given by a number of witnesses, including the plaintiff, Maggie Lee, showed without dispute that prior to the marriage between Maggie Lee and Will Watford, he had married a woman named Mary Gooden. She appeared in court in person and testified. She showed that on March 2, 1920, she and Will Watford came to Birmingham from Acmar and were married at the court house. In 1923 they separated. Mary went to West Virginia and has lived there ever since. She testified that she had never gotten a divorce from Will Watford and that he had never gotten one from her.

In its finding of fact, the court said: "After the death of Will's first wife Maria, he proceeded to marry Mary Gooden, who had already borne him four children. This marriage occurred in 1920 in Birmingham, Alabama."

Since the trial court found as a fact that Will Watford married Mary Gooden in 1920 and there was evidence to support this finding, this court will accept the marriage of Will Watford and Mary Gooden as a proven fact.

"Section 28 of the Workmen's Compensation Act, among other things, provides

that the determination of the judge 'shall be filed in writing with the clerk of the said court * * * and shall contain a statement of the law and facts and conclusions as determined by said judge.' We think the word 'facts,' as used, is equivalent to the proven facts of the case." Ex parte Sloss-Sheffield Steel & Iron Co., 207 Ala. 219, 92 So. 458, 460.

 It is suggested that there was a conflict in the evidence on the issue as to the validity vel non of the marriage between Will Watford and Mary Gooden. We are not here referring to any question relating to the dissolution of that marriage, but only as to its validity. The suggested conflict in the evidence is based on the idea that evidence of the marriage of Mary Gooden and Will Watford on the one hand and a presumption in favor of the validity of the marriage of Maggie Lee and Will Watford on the other hand, makes up a conflict. This, we believe, is an erroneous conclusion. True, there is a presumption in favor of the marriage of Maggie Lee and Will Watford, but this is a presumption which spends itself and ceases to exist when proof is made of the marriage between Mary Gooden and Will Watford, which is accepted by the court. We think that the trial court properly found that Mary Gooden married Will Watford. We further think that there was no conflict in the evidence on this issue. Accordingly, as stated, we think that that finding of fact by the trial court should be recognized here. The authorities sustain our view. Mutual Life Ins. Co. of New York v. Maddox, 221 Ala. 292, 295, 128 So. 383; Sovereign Camp, W. O. W. v. Hackworth, 200 Ala. 87, 75 So. 463.

The trial court, however, in effect found that the marriage of Mary and Will Watford had been dissolved, giving effect to the presumption in favor of the validity of the subsequent marriage by presuming that the earlier marriage had been dissolved by divorce. The principle referred to above is stated again as follows: " 'If it is shown that a party to a marriage has contracted a previous marriage and that his or her former spouse is still living, this has been held not to destroy the prima facie validity of the second marriage. In such a case it has been presumed that the first marriage has been dissolved by divorce, and that the burden to show that it has not rests on the person seeking to impeach the last marriage, notwithstanding he is thereby required to prove a negative. Here, the presumption of the continuance of the first marriage is made to yield to the presumption in favor of the validity of the second marriage and of the innocence of the parties to it.' " Ex parte Young, 211 Ala. 508, 101 So. 51, 52. See also Sloss-Sheffield Steel & Iron Co. v. Alexander, supra.

 We have examined the evidence in this case with great care. There is no need to set it out in detail. We conclude that it was sufficient to rebut the presumption in favor of the subsequent marriage. The evidence shows that Will Watford lived in only four counties during his lifetime, all counties being in Alabama. They were Hale County, Perry County, St. Clair County, where Acmar is located, and Jefferson County, where Alden is located. The proof showed that the records of these counties, including both divisions of St. Clair County and the Bessemer Division of Jefferson County, did not show a divorce between Will Watford and Mary Gooden in those counties. The trial court found in effect that Will Watford could have been absent from these counties for indefinite periods of time during which he could have obtained a decree of divorce from Mary, without knowledge on the part of Mary. As stated, we have considered the evidence with great care and do not think there were tendencies of the evidence to justify this conclusion by the trial court. We conclude that Will Watford did not lawfully marry Maggie Lee because at the time his marriage to Mary Gooden was undissolved.

"A common-law marriage having been shown, the law presumes its validity, and casts the burden upon him who questions it to establish its invalidity. However, this burden has been fully met by defendant in the court below. And, as found by the trial judge, Mary Alice Jenkins (Bell) would be entitled to compensation as the widow of Hardy Bell except for the fact that said Hardy Bell was legally incapacitated to contract marriage by reason of his undissolved marriage to Eugenia.

"The said Eugenia Roberts Bell Brown testified: 'I knew he had lived in Ensley from one place to another, since we separated. I lived there and he lived there. I did not miss a week seeing him, and he would give me money. * * * We never got a divorce.' It appears from the evidence that Hardy Bell lived in Jefferson

County, Alabama, from March 26, 1924 (the date of his marriage to Eugenia Roberts), until the time of his death; and it further appears that the records of Jefferson County show that no divorce was ever granted dissolving the marriage of Hardy Bell and Eugenia Roberts Bell Brown." Bell v. Tennessee Coal, Iron & R. Co., supra.

The judgment of the lower court is reversed and judgment is here rendered for the defendant, the petitioner.

Reversed and rendered.

GARDNER, C. J., THOMAS, BOULDIN, FOSTER, and LIVINGSTON, JJ., concur.

BROWN, J., dissents.

BROWN, Justice (dissenting).

It is conceded by the appellant that the deceased workman and his employer were under the compensation act and that his death was caused by accident arising out of and in the course of his employment.

The evidence is without dispute that appellees were his actual dependents being supported through his labor.

Consistent with legislative policy of liberal application evidenced in the enactment of the workmen's compensation law, it is a settled rule of this court that on review in such cases by writ of certiorari, a bill of exceptions serves no purpose unless the statement of the evidence by the trial court is meager or omissive, and if there is any evidence found in the statement thereof by the trial judge or when resort to a bill of exceptions justifies found in such bill of exceptions which supports the conclusion of fact stated in the judgment, the finding and judgment of the trial court will not be disturbed. Gulf States Steel Co. v. Griffin, 214 Ala. 126, 106 So. 898; Sloss-Sheffield Steel & Iron Co. v. Alexander et al., 241 Ala. 476, 3 So. 2d 46.

The majority opinion, in my judgment, ignores this settled rule,—the court, as the prevailing opinion shows, proceeds in this case to settle a controverted issue of fact. Clearly there is evidence and tendencies of evidence in the statement of the trial court that supports the conclusion, "that the marriage between the plaintiff and Will Watford was valid and legal and that the plaintiff is the lawful widow of Will Watford and that the children named herein were his lawful children and lawful dependents under the Workmen's Compensation Act of Alabama."

The undisputed evidence shows there was a ceremonial marriage and "The presumption that a marriage is legal and valid in all respects is one of the strongest known to the law, and while it is true that the marriage relation when once proven is presumed to continue, yet this presumption attaches with full force to the latest marriage, the reason being that the presumption of innocence, morality and legitimacy will counterbalance and preponderate against the presumption of the former relations. * * *" Sloss-Sheffield Steel & Iron Co. v. Alexander et al., 241 Ala. 476, 479, 3 So.2d 46, 48.

This presumption is not a mere administrative presumption which disappears when evidence to the contrary is introduced, but is a presumption of law, which, as a matter of evidence, prevails until the evidence, in the judgment of the triers of fact, overcomes it. Protective Life Ins. Co. v. Swink, 222 Ala. 496, 132 So. 728. The prevailing opinion overturns and holds for naught the evidence as to the marriage of Will Watford and appellee Mary Lee Watford on the ground that there was evidence going to show that Watford had formerly married Mary Gooden. As to this relation, in the statement of the evidence, the trial court observes:

"Mary Gooden herself testified in the present case to the effect that she married Will Watford in Birmingham in March, 1920, and had never been married before and that she got no divorce from Will Watford.

"When Mary Gooden left Will Watford in 1923, the evidence shows that a negro man by the name of Hill left the same town at the same time, and there is other evidence that Mary Gooden, after leaving Will Watford, was known as Mary Hill."

The court further states: "No claims for compensation are made in this case except by Maggie Lee and her children. Mary Gooden had been absent from Will and had not been in communication with him for approximately nineteen years prior to his death. All of Will's children, whether legitimate or illegitimate, except his children by Maggie Lee, are either dead or else above the age to receive compensation under the Workmen's Compensation Act of Alabama."

In respect to the presumption of the validity of the marriage of Mary Lee and Will, the trial court in its statement of conclusions, observed: "With reference to the presumption of the validity of marriage at the time a ceremony of marriage is performed, and with reference to the presumption that former marriages have been dissolved, this Court must also take into consideration the doctrine of such cases as that of Williams v. Wilson et al. [210 Ala. 289], 97 So. 911 [913], where our Supreme Court, speaking through Mr. Justice Bouldin, had this to say, 'In raising presumption, certain principles of justice [in] and fair dealing among men must always obtain in the judicial mind. It should be a natural inference from the facts of the case. It should ascribe to human conduct the quality and motive of normal men and women, unless otherwise shown.'"

With reference to the contention of the defendant that Will Watford was not capable of contracting a marriage to the plaintiff because of his prior marriage to Mary Gooden, the court calls attention to the statement of facts heretofore set forth to the following effect: "The marriage between the plaintiff and Will Watford was a ceremonial marriage. Undoubtedly Will Watford seriously intended to establish a home and raise a family. At the time of this trial he had been dead for many months. Accordingly the parties and the Court could not have the benefit of his testimony concerning what he had done or what he had failed to do with reference to securing a divorce from Mary Gooden. The Court has previously pointed out the difference between such a marriage and that of Will Watford and Maggie Lee and the ceremony which was performed by the magistrate between Allen Washington and Maggie Lee. The presumptions of law concerning such a marriage as that between the plaintiff and Will Watford are powerful and justly so, to the effect that the marriage is legal and valid and that all prior marriages have been dissolved. Not only the welfare of the man and woman but the welfare of the children to be born, and there were seven of them born of this marriage, as well as the welfare of society in general powerfully impels the Courts to look with favor on these presumptions, which are pointed out and discussed, with citations from previous cases, in the late case of Sloss-Sheffield Steel & Iron Co. v. Alexander [241 Ala. 476], 3 So.2d 46."

The court further observed:

"The dire consequences of overturning and disregarding the presumption of the validity of this particular marriage and the presumption that all prior marriages, if any, had been properly dissolved by law are well illustrated in this case. Here we see an instance where a man and woman, Negro, it is true, but with every reason to desire and to consummate a legal and valid marriage, secured a marriage license and had a ceremonial marriage performed. We see a case where a man established a home for his wife, worked faithfully to support the wife and the seven children who were born to them. There was every sound and logical reason why he should have taken the necessary steps to make that marriage valid and to make his children legitimate, so that they might bear his name, inherit his property, if he had any property at the time of his death, and take as his children the compensation that would be payable at his death in lieu of the wages he would earn and furnish to them in case of his continued health and life.

"The burden of proof to show that the prior marriage to Mary Gooden had not been dissolved was on the defendant in this case. At best, the defendant showed that between the time that Mary Gooden left Will Watford and the time that Will Watford married Maggie Lee, a period of approximately eight or nine years, Will Watford lived in St. Clair County and worked in a coal mine, and that the Register of each Division of the Chancery Court in that County had examined the index of records of the Chancery Court in his Division and found no such case indexed as that of Will Watford versus Mary Watford. It may have been impossible to show by reliable testimony that Will Watford had remained without any interruption in that county during all of those years, as indeed the testimony does not show that he remained continuously in that county during those years. In the main, the testimony does show that he lived in that county and worked in the mines there. In view of the fact that there are strong presumptions of validity which should attend and do attend such a marriage, the Court is unwilling to hold that the testimony is sufficiently strong to reasonably satisfy the Court that Will Watford did not have an opportunity to secure and that he did not secure during those years a

divorce from Mary Gooden. It is true that Mary Gooden without objections not only stated that she did not secure a divorce but also stated that Will Watford did not secure a divorce. But the Court judicially knows that Mary Gooden might not have known about a divorce and yet one might have been secured by Will Watford. The testimony is clear that Mary Gooden did not communicate with Will Watford from the time she left him until the time he died, some eighteen years or more. She moved to a distant State and remained there, and there is no proof that Will Watford knew where she was or could have given her a notice or had notice given to her by the Court concerning a petition for divorce. Accordingly the Court follows the presumption delineated in our cases and gives effect to them and holds that Will Watford had the legal capacity to contract the marriage with this plaintiff.

"The result is that the Court finds and holds that the marriage between the plaintiff and Will Watford was valid and legal and that the plaintiff is the lawful widow of Will Watford and that the several children named herein were his lawful children and lawful dependents under the Workmen's Compensation Act of Alabama."

The conclusion and finding of fact stated in the judgment of the trial court are made final and conclusive between the parties by the statute, and on review, if there is legal evidence to support such finding, it will not be disturbed. Code 1940, Tit. 26, §§ 297–304; Hearn v. United States C. I. P. & F. Co., 217 Ala. 352, 116 So. 365; Trannon v. Sloss-Sheffield Steel & Iron Co., 233 Ala. 312, 314, 171 So. 898. The defense of the appellant depended on the proof of a negative—that the alleged marriage between the dead workman and Mary Gooden was *not* dissolved,—and the evidence adduced by it to that end was not sufficient to overcome the presumption of honesty, decency and innocence attending the ceremonial marriage of appellee and the deceased workman. Protective Life Ins. Co. v. Swink, 222 Ala. 496, 122 So. 728.

There is no question of double liability in this case. Mary Gooden was not a claimant and had not received support from Will Watford within twelve months. Code 1940, Tit. 26, § 280; Wilson v. Birmingham Electric Co., 219 Ala. 436, 122 So. 411. All of the equities are in favor of the appellees and the prevailing opinion applies to the case a harsh and strict rule which denies them protection.

I am of opinion that the judgment of the circuit court is sound and should be affirmed and, therefore, respectfully dissent.