266 So.2d 298

**O. D. LINDSEY**

v.

**Rosalavita LINDSEY.**

**7 Div. 47.**

Court of Civil Appeals of Alabama.

July 5, 1972.

Rehearing Denied Aug. 30, 1972.

Phillips & Watson, Anniston, for appellee.

James D. Forstman, Richard L. Taylor, Birmingham, for appellant.

BRADLEY, Judge.

This is an appeal from a final decree dismissing a bill in the nature of a bill of review for failure of the proof.

The complainant-appellant sought to have a prior divorce decree set aside on the ground of fraud and the availability of newly discovered evidence. The gist of the fraud allegation was that the wife—appellee here, complainant in the divorce proceeding—had falsely alleged and testified that she was a joint owner with appellant of a parcel of property allegedly acquired while married. The import of the newly discovered evidence was that appellee was married at the time she allegedly married appellant.

This matter commenced when appellee filed a suit for a divorce from appellant in the Circuit Court of Calhoun County alleg-

ing cruelty and seeking the disposition of certain jointly held property.

Appellant was served with a copy of the complaint but made no effort to defend against the suit; consequently a decree pro confesso was rendered against him. Subsequently, a deposition made by appellee was filed in the case claiming that a certain parcel of property was acquired by her and appellant during the time they lived together as man and wife. Later a final decree was rendered divorcing the parties from the bonds of matrimony and ordering that the jointly owned property be sold for division and the proceeds divided equally between them.

Appellant then filed a motion to set aside the decree and postpone the sale of the property. The court treated said motion as an application for rehearing and stayed the sale of the property pending a hearing on the application. Appellee filed an answer and, after a hearing, the court denied the application for rehearing.

The register, pursuant to the directive of the court, sold the property to the highest bidder, appellee, for $5,000. From the proceeds of the sale certain indebtednesses outstanding against the property were satisfied and the remainder, if any, was to be divided equally between appellant and appellee.

Thereupon appellant filed a bill in the nature of a bill of review in the same numbered proceeding out of which was rendered the divorce decree. Upon the filing of a proper bond the trial court permitted appellant to remain in possession of the property in question until a decision was made on the bill in the nature of a bill of review. To this bill appellee filed a motion to dismiss principally on the ground that no collateral attack had been made but in fact an attempt at a direct attack had been made by the use of a bill in the nature of a bill of complaint. The trial court dismissed the bill without prejudice.

Thereafter a separate proceeding was commenced by a new bill in the nature of a bill of review.

The complaint is based on the contention that appellee committed fraud in telling the court in the divorce suit, through her allegations and testimony, that she and appellant were joint owners of a certain parcel of property located in Calhoun County, Alabama and which is further described in said complaint. Appellant further contends that newly discovered evidence regarding the marriageability of appellee at the time they were married supports his contention as to the fraud and requires a decree quite different from the one previously rendered.

The evidence shows that appellant and appellee were legally married in Tallahassee, Florida on January 10, 1967. This marriage ceremony took place about six months after appellant had obtained a divorce from Ruth Lindsey. This divorce decree was obtained in St. Clair County, Alabama.

Appellee testified that she accompanied appellant to St. Clair County to get the divorce from his other wife.

Appellee further stated that she and appellant started living together as man and wife in 1960, and moved to Anniston, Alabama in 1962 and bought a house August 30, 1963. The deed was in appellant's name only; however, the mortgage to the property was executed in the name of appellant and appellee as his wife.

Appellant and appellee lived in this house as man and wife until they separated in April 1970.

Appellee stated that she and appellant were in the liquor business and the payments on the house were made from the proceeds of this activity. She stated appellant had no other job.

It appears from the evidence that appellee thought she was married to a man by the name of Richard Warren in Sarasota, Florida in 1943 when she was fifteen years

old. Appellee says she lived with Warren in Sarasota for five or six years, then left him and went to Raleigh, North Carolina. She stated that Warren had always lived in Sarasota, Florida.

In 1952 appellee commenced divorce proceedings against Warren in Sarasota, but failed to pursue such to a conclusion for the reason that Warren was married at the time he allegedly married appellee.

The evidence showed that Warren married Weltha Lee Howard on October 3, 1936 and had never obtained a divorce from her.

Weltha Lee Warren testified that she lived with Richard Warren as man and wife until 1939 when they separated and she moved to Muscogee County, Georgia where she lived until 1941. Thereafter she moved to Wayne County, Michigan where she has resided ever since.

There was testimony by appellant that he had met Richard Warren and knew he was alive at the time the divorce proceedings were commenced by appellee.

■ Appellant filed four assignments of error and argued only three of them. Assignment two was not argued and is considered waived. Rule 9, Supreme Court Rules.

Assignments three and four contend that the trial court erred in dismissing the bill in the nature of a bill of review and denying him relief, and are argued together.

■ The bill of complaint in the present proceeding is styled bill in the nature of a bill of review and asks that a final decree rendered in a suit for divorce between the present parties be set aside as void for that fraud infected its procurement. Such a bill is properly denominated a bill in the nature of a bill of review.

However, the bill of complaint also asked that the final decree of divorce be set aside for that the appellant has newly discovered evidence that would have re-

quired a different decree from the one rendered against him.

It has been said that a bill of review must be based on an error of law apparent from the record or newly discovered evidence; and it would seem that these two remedies would be inconsistent and therefore not available in the same complaint. However, the Supreme Court has stated that to include the attributes of each in a single bill would not make it multifarious. Hooke v. Hooke, 247 Ala. 450, 25 So.2d 33.

The Supreme Court did say, however, in Alexander v. Alexander, 230 Ala. 170, 160 So. 343, that if the so-called newly discovered evidence was known prior to trial or with due diligence could have been known, relief would be barred.

In the present case appellant was served with a copy of the complaint and thereby was apprised of the complaint of the appellee and that she claimed to own one-half of the described parcel of property. Appellant made no effort to contest this complaint and suffered a decree pro confesso to be rendered against him.

Later, in the hearing on the present complaint, appellant says that he was married to Ruth Lindsey in 1963 when he bought the house and was divorced from Ruth Lindsey June 28, 1966 in St. Clair County, Alabama. Appellant did not testify that he was living with Ruth Lindsey at the time he purchased the property in question or at the time of the divorce.

Appellant also stated on direct examination that he did not know that appellee had been married prior to her marriage to him. He stated that appellee told him of her prior marriage after they were married in 1967. He said that appellee told him that she had been married to Richard Warren but that he was dead. After they married, appellant says that he met Warren and knew that he was alive. After discovering Warren alive, appellant stated that appellee told him that she had divorced Warren. Appellant then stated that he searched the

records in Sarasota, Florida and could find no evidence of a divorce between appellee and Richard Warren, but did find evidence that appellee had started divorce proceedings but never prosecuted the matter to completion.

Appellant also stated that he ascertained that Warren was alive but confined to a mental institution at Arcadia, Florida.

Appellant stated on cross-examination that he and appellee started living together in 1960 in Dade County, Florida; then in 1962 they moved to Calhoun County, Alabama where they have lived ever since. He said that appellee told him she had lived for awhile in North Carolina. He further stated that appellee told him that she had been married to Richard Warren, but that he was dead. Then, after their marriage, but before their divorce, appellee learned that Warren was not dead.

Weltha Lee Howard Warren, a witness for appellee, testified that she married Richard Warren in Sarasota, Florida on October 3, 1936 and had never divorced him or been divorced by him. She stated she had lived in Sarasota, Florida, Muscogee County, Georgia and Wayne County, Michigan, where she is presently residing, and that Richard Warren had lived in Sarasota, Florida. Mrs. Warren's testimony was supported by exhibits showing her marriage to Warren, certificates from the clerks of the proper courts of Sarasota, Florida, Muscogee County, Georgia and Wayne County, Michigan showing that no divorce was of record dissolving the bonds of matrimony existing between Weltha Lee and Richard Warren.

The appellee testified that she married appellant on January 10, 1967. She said that she and appellant started living together as man and wife in 1960. This relationship started in Sarasota, Florida. They then moved to Miami, Dade County, Florida. Appellee stated that she knew at this time that Richard Warren was married.

In May 1962 appellant and appellee moved to Anniston, Alabama, according to appellee, and lived together as man and wife. She said that in 1963 they moved into the house on Pine Street in Anniston, the parcel of property in controversy, and lived there until they separated on April 18, 1970. She further testified that she signed the mortgage to the property as appellant's wife.

Appellee testified that appellant had not been employed except in the liquor business since he arrived in Anniston. She stated that she assisted him in this enterprise and did most of the work. She said that the payments on the mortgage and their other living expenses were made from the proceeds of this activity.

Appellee said that she went through a marriage ceremony with Richard Warren in Sarasota, Florida in 1943 when she was 15 years old. She did not know that he was married at that time. They lived together until 1948 or 1949, all in Sarasota, at which time they separated. She moved to Raleigh, North Carolina and stayed for two years. Then in 1952 she commenced divorce proceedings against Warren in Sarasota, but did not complete the proceedings because she learned that Warren was married at the time he was supposed to have married her.

She stated that Warren lived in Sarasota, Florida from the time they separated until such time as he was sent to Arcadia, Florida, the site of the mental institution. This period of time extended to April 18, 1970, the date she separated from appellant.

Appellee said that she told appellant prior to their separation that she had thought she was married to Richard Warren but discovered he was married at the time and she left him. She also said she told appellant that Warren was still living.

The evidence above recited strongly supports the conclusion that appellant had knowledge of appellee's abortive marriage

to Richard Warren and that he was alive, before he and appellee separated and prior to the filing by appellee of a divorce suit. This evidence was available to appellant at the time this divorce proceeding was filed and could have been presented to the court in that proceeding but it was not so presented. Appellant suffered a decree pro confesso to be rendered against him in that proceeding. He now comes before the court saying he has newly discovered evidence that will change the court's former decree. We do not consider it newly discovered evidence, therefore, this aspect of the complaint is unsupported by the proof.

In Hooke v. Hooke, supra, the Supreme Court said:

"To sustain a bill to vacate the judgment or decree of a court of competent jurisdiction for fraud, the bill must allege the facts showing that the fraud was in the concoction or procurement of the judgment or decree and must be extrinsic or collateral to the matter which was tried and determined by them. Sims v. Riggins, 201 Ala. 99, 77 So. 393; Miller v. Miller, supra; Jones v. Henderson, 228 Ala. 273, 153 So. 214. However, this has been held to include false and fraudulent statements in a petition, which were necessary to invoke the power or jurisdiction of the court to render the decree under attack.

\*    \*    \*    \*    \*    \*

"The rule is well settled that perjury or false swearing in the course of litigation is not per se a ground of equitable interference in a judgment or decree. . . ."

But the Supreme Court also said in Stephens v. Stephens, 251 Ala. 431, 37 So.2d 918, that:

"We have also held that one who seeks relief from a judgment or decree of a court of competent jurisdiction must aver and prove that he was himself free from fault or negligence in suffering the judgment or decree to be entered. [Citations omitted]"

It is quite obvious from this case that appellant failed to sustain the burden so cast upon him. He had the knowledge he now attempts to bring before the court at the time he received notice of the divorce proceeding; he had knowledge of the averments in that complaint made by appellee and he could have appeared in that proceeding and contested the allegations of said divorce complaint. But appellant did not do that; he waited until the matter had reached the point where it appeared that he was losing some property that he might have claim to and then he questions the allegations of the divorce complaint. This is much too late.

■ We conclude that appellant negligently suffered the divorce decree to be rendered against him and cannot now complain.

■ As pointed out in *Hooke*, supra, the fraud necessary to support a bill in the nature of a bill of review must be extrinsic or collateral as distinguished from intrinsic.

■ An example of intrinsic fraud would be a false assertion of facts constituting elements of an equitable right and supported by perjured testimony. This would be of the very essence of the matter previously tried and cannot be retried in a proceeding commenced by a bill in the nature of a bill of review. Anderson v. Anderson, 250 Ala. 427, 34 So.2d 585.

■ In the instant case the so-called fraud relied on by appellant is that appellee was married at the time of her marriage to and divorce from appellant and that they did not acquire any property while married. It is also contended that appellee lied in alleging and deposing that she was eligible to enter the marriage state with appellant and that they were married at the time the property was purchased. Such fraud, if it be fraud, is intrinsic and cannot be used to support a bill in the nature of a bill of review.

The Supreme Court in Sloss-Sheffield Steel & Iron Co. v. Watford, 245 Ala. 425, 17 So.2d 166, quoted with approval the following statement from Pittinger v. Pittinger, 28 Colo. 308, 64 P. 195, 89 Am.St.Rep. 193:

"If it is shown that a party to a marriage has contracted a previous marriage and that his or her former spouse is still living, this has been held not to destroy the prima facie validity of the second marriage. In such a case it has been presumed that the first marriage has been dissolved by divorce, and that the burden to show that it has not rests on the person seeking to impeach the last marriage, notwithstanding he is thereby required to prove a negative. Here, the presumption of the continuance of the first marriage is made to yield to the presumption in favor of the validity of the second marriage and of the innocence of the parties to it."

The trial court in the instant case held that appellant had failed to sustain the burden cast upon him. In this conclusion we agree.

▇ Appellant proved that Richard was living and that there was a marriage ceremony performed between appellee and Richard Warren, but did not negative the fact that a divorce had not been granted as to either party in Raleigh, North Carolina, Dade County, Florida or Anniston, Alabama. This is required if appellant is to sustain the burden of proving that there is a valid subsisting former marriage. Sloss-Sheffield Steel & Iron Co. v. Watford, supra; Ashley v. Ashley, 255 Ala. 313, 51 So.2d 239.

▇ Even though appellant failed to prove that Richard Warren and appellee were not divorced, appellee, by proper evidence from the various places where Richard Warren and Weltha Lee Warren had lived, proved that Weltha Lee and Richard Warren had not been divorced. Hence, the so-called marriage between Richard Warren and appellee was void and

appellee had a legal right to enter into the marriage with appellant in 1967.

Assignment of error one contends the trial court erred in sustaining an objection to the following question:

"Now, Mr. Lindsey, as one of the grounds for that divorce there was alleged in the complaint by the complainant, Mrs. Rosalavita Lindsey that you did on or about the 18th day of April, 1970, strike your wife and committed actual violence upon her person. On or about that date, or any time prior to that, did you actually strike your wife?"

Appellant argues that the purpose prompting this question was "to show fraud on the part of appellee in false allegations and false testimony in her divorce proceedings."

The allegations of the complaint and the evidence in support thereof were directed to that aspect of the divorce complaint and appellee's deposition in support of it contending that appellant and appellee were the owners jointly of the property where they had been living since shortly after arriving in Anniston. No complaint was made about the grounds of divorce in the bill in the nature of a bill of review. No part of the complaint or evidence submitted in support of it went to this aspect of the divorce proceeding. The only aspect of the divorce decree that was seriously questioned was the part relating to the property required to be sold and the proceeds divided between appellee and appellant on the basis that it was jointly owned property.

▇ The question asked of the witness not being related to the major issue raised by the complaint, the trial court did not commit error in sustaining objection to it.

No reversible error having been argued, this case is affirmed.

Affirmed.

WRIGHT, P. J., and HOLMES, J., concur.